Bobby R. SAVAGE,
Petitioner–Appellant,

v.

Wayne ESTELLE, Warden, et al.,
Respondent–Appellee.

No. 87–6681.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1988.

Decided July 16, 1990.

As Amended on Denial of Rehearing
and Rehearing En Banc Feb. 5, 1991.

Mary F. Gibbons, Beverly Hills, Cal., for petitioner-appellant.

David F. Glassman, Deputy Atty. Gen., Los Angeles, Cal., for respondent-appellee.

Before TANG, THOMPSON and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

In this case of first impression, we are called upon to determine whether a trial court may deny a criminal defendant's right to represent himself at trial where the defendant's severe speech impediment renders him unable to articulate his own defense. The state trial judge imposed restrictions on defendant's courtroom conduct which amounted to an effective denial of his right to proceed *pro se*. We conclude that under the controlling Supreme Court precedent the action was not error and therefore affirm the district court's denial of a petition for a writ of habeas corpus.

I

On August 14, 1980, Bobby Ray Savage ("Savage" or "appellant") threw acid in the face of a woman he had been hired to "beat up." The victim died ten days later as a result of the attack. Following Savage's arrest, an appointed counsel represented him at both his preliminary hearing and subsequent arraignment in California state court where he pleaded not guilty to charges of first-degree murder, mayhem, assault with a caustic substance, and conspiracy to commit these offenses.

Citing a conflict of interest with his court-appointed attorney, Savage filed *pro se* motions for substitution of himself as counsel and to proceed *in propria persona.*[1] Judge Horowitz, the state trial judge handling pre-trial matters in the case, granted co-counsel status to the appellant pending trial and set Savage's motions down for a hearing. Although the appellant withdrew his motion for substitution of counsel the following week, he reit-

---

1. The phrase *"pro se"* means "for himself," and *"in propria persona"* means "in his own person," when their referents are in the masculine singular. In legal discussions of an accused's right to represent himself at trial, courts have appropriately used the phrases interchangeably. There is no legal distinction in this context.

erated his request that he be permitted to proceed *pro se*. At a hearing on the appellant's motion, Judge Horowitz noted that Savage's severe speech impediment might cause him considerable difficulty in presenting his own defense but, finding that the appellant had made a knowing and intelligent waiver of his right to counsel, reluctantly granted the motion, discharged Savage's court-appointed attorney, and appointed an investigator to assist the appellant with the preparation of his defense.

For the next two and one-half months, Savage handled his own defense, attending hearings and filing various motions *pro se*. Then, following a colloquy with Judge Devich (who had replaced Judge Horowitz) in which the problems presented by the appellant's severe speech impediment were discussed, Savage accepted the proffered appointment of attorney Gerald Fogelman as his co-counsel. Although Judge Devich stated that Fogelman, and not the appellant, would "put the case on" and "present the evidence to the jury,"[2] Savage accepted the appointment of Fogelman because of the court's assurances that it would not affect any of the appellant's pending *pro se* motions.

Three months later, Savage filed another *pro se* motion in which he alleged a conflict of interest with his co-counsel and asked that Fogelman be relieved. Following a hearing *in camera*, Judge Kolostian (who had replaced Judge Devich) denied the motion. A similar motion made two months later before Judge Kolostian was also denied.

On January 10, 1984, after several continuances and just one week before his trial was scheduled finally to begin, Savage renewed his motion to relieve Fogelman as his co-counsel, again alleging a conflict of interest. Following a lengthy hearing, Judge Grover, who was destined to preside over Savage's trial, denied the motion. The basis for Judge Grover's ruling was that the appellant's speech impediment was so severe that it would effectively preclude him from being able to articulate his defense to a jury. *See* Appendix. Judge Grover further ruled that, although Savage would not be permitted to question jurors, cross-examine witnesses, make objections, or otherwise argue any portion of his case directly to the jury without first obtaining the court's leave to do so, the appellant would retain his status as co-counsel. This status included full *in propria persona* privileges at the jail with the concomitant rights of access to a law library and private meetings with his court-appointed investigator, as well as the right to file motions.

Following a lengthy jury selection and trial, Savage was convicted of first-degree murder, mayhem, and assault with a caustic substance. The appellant was duly sentenced and, after having exhausted his state court remedies, filed this petition for a federal writ of habeas corpus. Savage argued that the state trial court had denied him his constitutional right to represent himself at trial and that his conviction must therefore be overturned. The district court denied the writ and dismissed the petition, and this timely appeal followed. We review the district court's decision *de novo*. *See Nevius v. Sumner*, 852 F.2d 463, 466 (9th Cir.1988), *cert. denied*, 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989).[3]

## II

■ Criminal defendants have a constitutional right to forgo the assistance of counsel and to represent themselves instead. The Supreme Court found this right in the sixth amendment in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and reacknowledged its existence nearly a decade later in *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).[4] The Court rejected

---

**2.** Reporter's Transcript on Appeal, Vol. A, at 18 (Apr. 15, 1983).

**3.** Because the district court denied the petition without an evidentiary hearing, we must first determine whether facts were alleged which, if proven, would entitle the petitioner to relief. If such facts were alleged, we must determine whether an evidentiary hearing was necessary to establish the truth of the allegations. *See Nevius*, 852 F.2d at 466.

**4.** The sixth amendment provides in its entirety:

impassioned contentions that its finding of the right of defendants to proceed *pro se* would result in unfair trials because most criminal defendants have no familiarity with substantive or procedural rules of law.[5]

■ The Supreme Court has identified only two instances in which an accused's right to represent himself may be overridden by other concerns. First, the defendant must "knowingly and intelligently forgo[ ] his right to counsel." *McKaskle*, 465 U.S. at 173, 104 S.Ct. at 948. Second, he must be "able and willing to abide by rules of procedure and courtroom protocol." *Id.* If a defendant meets these two requirements, he may represent himself.

■ Appointment of counsel for an accused, however, is not necessarily inconsistent with the accused's right to proceed *pro se*. Thus, it is no violation of the sixth amendment "when a trial judge appoints standby counsel—even over the defen-

dant's objection—to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." *Id.* at 184, 104 S.Ct. at 954.

■ The Supreme Court in *McKaskle* set forth a two-part test for determining whether an appointment of such standby counsel has resulted in violation of the *Faretta* right. "First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury." *Id.* at 178, 104 S.Ct. at 951. The Court identified this as the "core of the *Faretta* right." *Id.* "Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *Id.* If either of these requirements is not met, the ac-

---

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

The Court in *Faretta* conceded that the right to self-representation is "not stated in the Amendment in so many words." 422 U.S. at 819, 95 S.Ct. at 2533. It nonetheless determined that the right can be "independently found in the structure and history of the constitutional text." *Id.* at 820 n. 15, 95 S.Ct. at 2533 n. 15.

**5.** For instance, Chief Justice Burger, joined in dissent by Justices Blackmun and Rehnquist, argued as follows:

> Nor is it accurate to suggest, as the Court seems to later in its opinion, that the quality of his representation at trial is a matter with which only the accused is legitimately concerned. Although we have adopted an adversary system of criminal justice, the prosecution is more than an ordinary litigant, and the trial judge is not simply an automaton who insures that technical rules are adhered to. Both are charged with the duty of insuring that justice, in the broadest sense of that term, is achieved in every criminal trial. That goal is ill-served, and the integrity of and public confidence in the system are undermined,

> when an easy conviction is obtained due to the defendant's ill-advised decision to waive counsel. The damage thus inflicted is not mitigated by the lame explanation that the defendant simply availed himself of the "freedom" "to go to jail under his own banner...." *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (CA2 1965). The system of criminal justice should not be available as an instrument of self-destruction.

> In short, both the "spirit and the logic" of the Sixth Amendment are that every person accused of crime shall receive the fullest possible defense; in the vast majority of cases this command can be honored only by means of the expressly guaranteed right to counsel, and the trial judge is in the best position to determine whether the accused is capable of conducting his defense. True freedom of choice and society's interest in seeing that justice is achieved can be vindicated only if the trial court retains discretion to reject any attempted waiver of counsel and insist that the accused be tried according to the Constitution.

*Faretta,* 422 U.S. at 839–40, 95 S.Ct. at 2543–44 (Burger, C.J., dissenting) (certain citations omitted); *see also id.* at 849, 95 S.Ct. at 2548 (Blackmun, J., dissenting) ("I cannot agree that there is anything in the Due Process Clause or the Sixth Amendment that requires the States to subordinate the solemn business of conducting a criminal prosecution to the whimsical—albeit voluntary—caprice of every accused who wishes to use his trial as a vehicle for personal or political self-gratification.").

cused's right to represent himself has been effectively denied.

## III

■ The state trial court ruled that it would permit Savage to exercise his right to represent himself at his trial. Nonetheless, it placed certain restrictions on that exercise. For instance, it specified that, absent prior permission from the court, only Fogelman, Savage's appointed "co-counsel," could conduct *voir dire*, examine witnesses, and argue before the jury. We must determine whether these restrictions resulted in an effective denial of Savage's *Faretta* right.

■ As we noted above, the right of a criminal defendant to represent himself at trial consists of two fundamental elements. The defendant must himself control the case presented to the jury, and the jury must perceive the defendant as having such control. Subsumed in these requirements is the defendant's right "to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id.* at 174, 104 S.Ct. at 949.

The record reveals that Savage was denied at least some of these rights. While the trial court specified that Savage could himself make motions and address the

court, it refused to allow him to participate in *voir dire*. It would not permit him to question witnesses. It never allowed him to address the jury. Appointed co-counsel assumed all these responsibilities, and the court rejected Savage's repeated pre-trial requests to go it alone.

It cannot be seriously argued here that the jury ever perceived Savage as representing himself. Rather, Savage appeared before it as would have any criminal defendant represented by counsel. Fogelman was introduced to the jury as Savage's counsel. Fogelman questioned prospective jurors during *voir dire*. Fogelman examined and cross-examined the witnesses. Fogelman objected to various presentations of the prosecution's evidence. Under *McKaskle*, appellant's right to proceed *pro se*, though said to have been granted by the court, was effectively denied by the actions of the court and appellant's appointed co-counsel.[6]

## IV

■ We must next determine whether this denial of Savage's *Faretta* right was permissible.[7] A denial is permissible if an accused does not "knowingly and intelligently forgo[ ] his right to counsel" or is not "able and willing to abide by rules of procedure and courtroom protocol." *McKaskle*, 465 U.S. at 173, 104 S.Ct. at 948.[8]

---

6. Because we conclude that the jury could not perceive that Savage was representing himself, we do not reach the question of whether Savage was permitted to preserve actual control over the case presented to the jury.

7. Estelle contends that Savage's request to represent himself was untimely and that he therefore waived his *Faretta* right. We reject the contention. A request to proceed *pro se* that is made before the jury is impaneled is timely. *United States v. Smith,* 780 F.2d 810, 811 (9th Cir.1986). Savage's final request was made a week before *voir dire* began and is therefore timely.

Estelle also argues that Savage waived his *Faretta* right by acquiescing to the co-counsel's participation in the case. We disagree. Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously re-

news his request that he be allowed to go it alone. *McKaskle,* 465 U.S. at 183, 104 S.Ct. at 953–54; *United States v. Lorick,* 753 F.2d 1295, 1298–99 (4th Cir.), *cert. denied,* 471 U.S. 1107, 105 S.Ct. 2342, 85 L.Ed.2d 857 (1985). Here, Savage initially agreed to co-counsel's participation in his case, but a week before trial made a timely, unambiguous, and unequivocal request to proceed *pro se,* which he repeated numerous times. The record indicates that Savage could scarcely have done more to advance his attempt to proceed *pro se.*

8. We have previously said that the right of an accused to conduct his own defense and to proceed to trial without the assistance of an attorney is an absolute right. *United States v. Wadsworth,* 830 F.2d 1500, 1504 (9th Cir.1987); *United States v. Balough,* 820 F.2d 1485, 1487 (9th Cir.1987). We note that the first characterization of the right to self-representation as being "absolute" appears in *Balough,* 820 F.2d at

## A

The state trial court found that Savage knowingly and intelligently attempted to exercise his right to forgo the assistance of counsel. Nothing in the record indicates that this finding was erroneous, nor does either party so argue. Savage therefore satisfied the first *McKaskle* requirement for exercise of the *Faretta* right.

## B

■ Was Savage "able and willing to abide by rules of procedure and courtroom protocol"? *Id.* We conclude that he was not, and we therefore affirm the district court's denial of the petition for a writ of habeas corpus.[9]

The state trial court discussed Savage's speech impediment at length. It concluded that because of his extreme stutter Savage was physically incapable of presenting his case to the jury. It so concluded only after the appellant's inability "to communicate orally to the jury and to the court" was demonstrated again and again over the course of several months. *See* Appendix (quoting at length from the record to demonstrate that substantial evidence exists to support trial court's finding, "after having observed Mr. Savage in court and listening to him," that "he lacks the capacity to communicate orally to the jury and to the

court"). Judge Grover's conclusion comported with the findings of each of the three other state trial judges who had handled pre-trial matters in Savage's murder prosecution. There is substantial evidence in the record to support the court's finding. *See id.;* 28 U.S.C. § 2254(d).

Communicating with the factfinder (here, a jury) is the essence of a trial. In our adversarial system of criminal justice, it is essential that those representing the parties be able to examine witnesses and to argue to the jury, so long as those are means by which the parties wish to make their case.[10] Yet by Savage's own characterization, the greater the tension he faced, the worse his stutter became—and none may dispute the tension faced by a man being tried for first-degree murder. We deal here not with an accused who was merely unable to formulate his intended questions well, but one who, according to the supported finding of the trial judge, was unable to formulate them at all. *See* Appendix. Savage's speech impediment therefore would not have been merely a minor hindrance to the presentation of his case; rather, it rendered him unable to abide by the rules of courtroom procedure. In short, under *McKaskle*, the trial court's effective denial of appellant's *Faretta* right was permissible because of Savage's inability to communicate his thoughts orally.[11]

---

1487, where this court cited to *Faretta*, 422 U.S. at 807, 95 S.Ct. at 2527, and *United States v. Harris*, 683 F.2d 322, 324 (9th Cir.1982), as support for that proposition. However, nowhere in *Faretta* or in *Harris* is the right of self-representation referred to as "absolute," nor does the reasoning in either decision support such an assertion. The decision in *Wadsworth* simply cites to *Faretta* and to *Balough* as authority for the same proposition. 830 F.2d at 1504. Most importantly, neither *Wadsworth* nor *Balough* considered *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), in this context.

9. In reaching this conclusion, we have considered appellant's Supplemental Reply Brief received in this court on October 25, 1989.

10. Although under *Faretta* a defendant is entitled to "stand[ ] mute and forc[e] the state to its proofs," *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir.), *cert. denied,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987), such a situation is not presented here, where the appel-

lant did not intend to stand mute but had every intention of attempting to argue his case.

11. Although it is not directly related to our holding that Savage's *Faretta* right was properly denied under *McKaskle*, we note in passing that the trial court attempted to ensure that Savage's right to represent himself was denied only to the extent that his physical characteristics rendered him unable to present his own defense. For instance, even after the appointment of counsel, Savage maintained *in propria persona* privileges at the jail with the concomitant rights of access to a law library and private meetings with his court-appointed investigator. He also was permitted to file motions *pro se.* In short, the trial court ensured that the extent of the denial of Savage's *Faretta* right (and there is no gainsaying that it was denied) was directly related to the reason it was denied: Savage's inability to communicate to the jury. *See, e.g.,* Reporter's Transcript on Appeal, Vol. A, at 64 (Jan. 10, 1984) (court commented that "[a]ll I am saying is [ ] that *as to the courtroom procedure* and the

The relevant part of the above language in *McKaskle* has not yet been construed. While many courts have found defendants who were not willing to abide by rules of procedure and courtroom protocol, we can find no instance of a court's even having to consider, in light of *McKaskle*, whether the defendant was *able* to do so. We note, however, that some courts have considered a defendant's physical capacity to represent himself and reached similar results. *See, e.g., State v. Doss*, 116 Ariz. 156, 160, 568 P.2d 1054, 1058 (1977) (concluding that trial court properly denied request for self-representation where court found defendant physically unable to conduct his own defense due to effect of stress on his ability to speak and the likelihood of an epileptic seizure); *cf. Annas v. State*, 726 P.2d 552, 555–56 (Alaska Ct.App.1986) (defendant's anxiety, advanced age, and coronary disease resulting in impaired memory supported finding of incompetency to conduct own defense and incompetency to waive right to counsel); *People v. Rice*, 40 Colo. App. 357, 359, 579 P.2d 647, 649 ("A party may defend himself so long as the trial judge finds him competent to conduct his

defense."), *cert. denied*, 439 U.S. 898, 99 S.Ct. 261, 58 L.Ed.2d 245 (1978). And other courts have considered physical capacity in slightly different contexts. *Compare, e.g., Pickens v. State*, 96 Wis.2d 549, 559, 292 N.W.2d 601, 611 (1980) (holding that "any physical ... disability which may significantly affect [a defendant's] ability to communicate a possible defense to the jury" might preclude a finding of competency to conduct defense and stating that question of competency should be determined separately from question of whether waiver of right to counsel is knowing and intelligent) *with, e.g., McDowell*, 814 F.2d at 250 (criticizing *Pickens* and stating that the trial court did not err in "failing to determine whether [McDowell] was competent to conduct his own defense").[12]

We are not imposing a requirement that a trial court, in granting a defendant's request to proceed *pro se*, must consider explicitly whether the defendant is physically able to conduct his own defense, any more than it must consider on the record whether the defendant was willing to do so.[13] As described above, this is a case

---

questioning of witnesses, you can ask any questions that you want, but you will ask the questions through Mr. Fogelman") (emphasis added).

12. We note that the Sixth Circuit in *McDowell*, in criticizing the Wisconsin Supreme Court's decision in *Pickens*, did not mention or consider the intervening United States Supreme Court decision in *McKaskle*. In fact, *McDowell* contains a long discussion of the constitutional right to proceed *pro se*. *See* 814 F.2d at 248–251. While references to *Faretta* abound, one searches *McDowell* in vain—through the opinion, its appendix, and the special concurrence—for even a lone reference to the more recent and relevant *McKaskle*. *McKaskle* was particularly apposite, for in it the Supreme Court attempted to resolve some of the problems that *Faretta* had caused to arise and spoke of the requirement for exercise of the *Faretta* right that defendants be "able and willing to abide by rules of procedure and courtroom protocol." *McKaskle*, 465 U.S. at 173, 104 S.Ct. at 948.

13. Our review of the "able ... to abide by rules of procedure" requirement is thus different from our review of the requirement that an accused "knowingly and intelligently forgo[ ] his right to counsel." *McKaskle*, 465 U.S. at 173, 104 S.Ct. at 948. Because of the policy against implied waivers of such important rights as the

right to counsel, reviewing courts look to the record to ensure that a waiver of counsel was knowing and intelligent. Appellate courts look in the record for a colloquy between trial court and defendant that demonstrates such knowledge and intelligence. *See United States v. Rylander*, 714 F.2d 996, 1005 (9th Cir.1983) ("The preferred procedure is for the district judge to ensure that a waiver is made knowingly and intelligently by discussing with the defendant, on the record, the nature of the charges, the possible penalties, and the dangers of self-representation."), *cert. denied*, 467 U.S. 1209, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984). In rare instances, however, "absent such a colloquy, a knowing and intelligent waiver will [nonetheless] be found." *Id.; see Balough*, 820 F.2d at 1488 ("[W]e have also held that a limited exception may exist whereby a district court's failure to discuss each of the elements in open court will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver."); *see also United States v. Moya–Gomez*, 860 F.2d 706, 733 (7th Cir.1988) (holding same), *cert. denied*, — U.S. —, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *United States v. Hafen*, 726 F.2d 21, 25 (1st Cir.) ("Although appellate review would be simplified if the district court provided a short statement of its reasons for finding a defendant's waiver of counsel to be knowing and intelligent, neither

where the *Faretta* right was denied, not granted, and under *McKaskle* the denial was permissible. We alter not at all the notion that one who exercises his right to represent himself and to waive counsel may not later claim that he was denied his right to effective assistance of counsel. *See, e.g., Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46 ("[W]hatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"); *McDowell,* 814 F.2d at 251 (under same reasoning, such a defendant may not later claim that he was denied a fair trial).

■ Nor do we alter the rule that improper denial of the right to proceed *pro se* is *per se* prejudicial error. *See, e.g., McKaskle,* 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8 ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis."); *Adams v. Carroll,* 875 F.2d 1441, 1445 (9th Cir.1989) ("the denial of the right to self-representation is not amenable to harmless error analysis"); *Johnstone v. Kelly,* 808 F.2d 214, 218 (2d Cir.1986) ("we agree with the five circuits that have concluded that violation of a defendant's right to proceed *pro se* requires automatic reversal of a criminal conviction"), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987).[14] We merely interpret *McKaskle* as permitting denials of the *Faretta* right to an accused who is unable to abide by rules

of courtroom procedure, just as the right may be denied to those who are unwilling so to do.

That the heretofore-unconstrued language of *McKaskle,* which confirmed the requirement that defendants be "able ... to abide by rules of procedure," 465 U.S. at 173, 104 S.Ct. at 948, should not yet have been interpreted is not surprising, for Savage's is an extraordinary case. The accused had an extreme speech impediment that the trial court found rendered him physically unable to present his own case. The trial court's finding is substantially supported by the record. We conclude that *McKaskle* anticipated just such a rare case as this, where the trial court specifically stated that its restriction grew out of its concern for "the courtroom procedure and the questioning of witnesses." Reporter's Transcript on Appeal, Vol. A, at 64 (Jan. 10, 1984); *see supra* note 11.

It is important to emphasize what this case does not involve. We are not presented here with a denial of the right to communicate to the jury with the assistance of a sign language interpreter, or some other mechanical or non-mechanical means of rapid communication. Rather, in this case we decide only that the sixth amendment rights of a defendant who is physically incapable, for example, of conducting jury voir dire and examination of witnesses, and has not asked for and would clearly not benefit from such assistance, are not violated when the trial court appoints an attorney for him who can communicate on his behalf. *See supra* n. 11.

the Supreme Court nor the case law of this circuit has imposed such a requirement."), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984).

Of course, when we review the "able and willing to abide by rules of procedure and courtroom protocol" requirement, considerations of waiver are not implicated.

**14.** Exercise of the *Faretta* right has never been contingent on an accused's representing himself well. In fact, all have long recognized that the defendant who chooses to represent himself is almost always ill-served by his choice. *See, e.g., Faretta,* 422 U.S. at 834, 95 S.Ct. at 2540 ("It is undeniable that in most criminal prosecutions defendants could better defend with counsel's

guidance than by their own unskilled efforts."); *id.* at 838, 95 S.Ct. at 2543 (Burger, C.J., dissenting) ("The fact of the matter is that in all but an extraordinarily small number of cases an accused will lose whatever defense he may have if he undertakes to conduct the trial himself."); *id.* at 852, 95 S.Ct. at 2549–50 (Blackmun, J., dissenting) ("If there is any truth to the old proverb that 'one who is his own lawyer has a fool for a client,' the Court by its opinion today now bestows a *constitutional* right on one to make a fool of himself.") (emphasis in original). It is for this reason that harmless-error analysis is inapposite when the *Faretta* right is improperly denied.

Because Savage's *Faretta* right was properly denied under the *McKaskle* test, the petitioner failed to allege facts which might entitle him to relief. The district court therefore did not err in declining to hold an evidentiary hearing and in dismissing the petition for a writ of habeas corpus.

AFFIRMED.

### APPENDIX

The pre-trial and trial record demonstrates the insuperable difficulties that Savage would have faced in attempting to present his case without counsel. For instance, at one point before trial Savage argued to the court as follows:

THE DEFENDANT: I would like to address the conflict of interest with Mr. Fogelman first.

I—it is my understanding that I have a constitutional right to—that I have a right to waive counsel and to—and to proceed with—with—without the assistance—without the assistance of counsel, which I would—which I would—which I would—which I would request at—at— which I would request at this here time.

But I would also like to call to the court's a—to the court's a—to the court's a—attention that I have also filed similar—similar motions on—on July 29, 1983, and on September—on September—excuse me—Sep—Sep— September 26, 1983, again.

And it is my understanding—it is my understanding that, okay, I have a right to not have any counsel whatsoever.

And I would ask that—that—that— that the court—the court—that the court relieve Mr. Fogelman because, okay, I have been trying to get complete discovery of the case for several months now, okay?

Reporter's Transcript on Appeal, Vol. A, at 35–36 (Jan. 10, 1984). When the court declined to relieve Fogelman as Savage's co-counsel, the defendant objected as follows:

THE DEFENDANT: Then I would object to and I'd have a standing, running —I'd have a standing—a standing—a standing objection to any further—to any further—to any further—to any fur-

ther—excuse me—to any further—to any further proceedings.

And I would say that by you not allowing me to exercise my constitutional right to personal self—to personal self- —to self-representation you have—you have reduced this here whole trial to—to a sham, and you might as well sentence me, you know, because—[whereupon the court disagreed].

*Id.* at 52. At that time, the judge noted that "these are things that are happening during the relative calm of this proceeding, when there is no jury present and there are no spectators in the courtroom." *Id.* at 49. The perceptiveness of that comment was demonstrated by Savage's testimony when trial finally occurred. The following are just a few excerpts from that testimony:

Q  Tell us the conversation.

A  And I told him, well, I really didn't care to—I really didn't care to—to go into it on—I didn't want to get into it over—over the phone.

So we had made—we had made a—we made arrangements for me to meet him the next—ah—day.

Reporter's Transcript on Appeal, Vol. 13, at 1265 (Apr. 4, 1984).

Q  Spend any significant time down there in Long Beach?

A  No. It was very—ah—he was very—ah—brief, because whenever—he said he wanted to stop there first—okay.

Prior to leaving Vegas—prior to even meeting Mr. Robinson to—okay—actually leave Vegas, I had called up Tony—I had called up Tony and told him I was— that I was—ah—coming down to purchase a couple of ounces from him.

And he had asked me to—okay—be at his house prior to—ah—prior to ah—prior or to—prior to 10 o'clock that night.

*Id.* at 1340.

Q  And when and where was that?

A  Okay. I had stayed at home the— the—the—the other night, and I had gotten up—around—around—it was still in the—I'd gotten up in the—I'd gotten up —up—I'd gotten up sort of—of early, right?

Reporter's Transcript on Appeal, Vol. 14, at 1400 (Apr. 5, 1984).

Thus, there is substantial evidence in the record to support the following finding of the trial court:

THE COURT: You are competent to stand trial because you understand the nature of the proceedings against you.

My indication to you is that, in trying a lawsuit, and you are going to try a case before 12 jurors, that you undoubtedly have the intelligence to understand the nature of the proceedings that are going on. You have the intelligence to assist Mr. Fogelman in representing yourself.

However, I believe, because of your speech impediment, that you are not adequately able to convey your thoughts and your messages to a jury.

And I say that because of that, through no fault of your own, and because of this impediment, you could not possibly adequately represent yourself.

. . . .

MR. WEISBERG [for the People]: Your Honor, so the record is clear, the court is making the statement, after having observed Mr. Savage in court and listening to him, that he lacks the capacity to communicate orally to the jury and to the court.

And that therefore, because of a speech impediment, cannot adequately communicate and represent himself?

THE COURT: That is what I am saying.

Reporter's Transcript on Appeal, Vol. A, at 41, 46 (Jan. 10, 1984).