RICHARD CHRISTOPHER JOHNSON, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 32100

February 23, 2001                                    17 P.3d 1008

*David M. Schieck,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *James Tufteland* and *William T. Koot,* Chief Deputy District Attorneys, Clark County, for Respondent.

Before MAUPIN, C. J., SHEARING and BECKER, JJ.

## OPINION[1]

*Per Curiam:*

Richard Christopher Johnson appeals his conviction, pursuant to a jury verdict, of second-degree murder with the use of a deadly weapon. Johnson contends that: (1) his court-appointed trial counsel violated his Sixth Amendment[2] rights; (2) the district court violated his Sixth Amendment rights by refusing to allow him to represent himself; and (3) the district court erred in concluding that he was not entitled to a new trial based on the State's alleged failure to preserve videotape evidence.

In accord with a majority of jurisdictions that have addressed similar issues, we conclude that Johnson's counsel below improperly interposed an insanity defense against Johnson's wishes. Therefore, we reverse Johnson's conviction and remand this matter for further proceedings.

### STATEMENT OF THE FACTS

On April 8, 1995, Johnson shot and killed George Hightower outside Caesar's Palace Hotel and Casino in Las Vegas. Several eyewitnesses, including a Los Angeles police officer, identified Johnson as the shooter. One witness took numerous still photographs and eight surveillance cameras recorded the incident on videotape.

Immediately after the incident, an officer of the Las Vegas Metropolitan Police Department ("LVMPD") asked Caesar's security investigator Robert Lambright to turn over the surveillance tapes. Lambright later testified that he copied the relevant portions of an eight-plex tape onto a single tape, that the original eight-plex tape was misplaced, but that all the taped portions of the murder contained in the eight-plex tape were transferred to a standard VCR tape later presented at trial.

---

[1] This "Corrected Opinion" is issued in place of the opinion filed January 31, 2001.

[2] *See* U.S. Const. amend. VI.

Following its initial investigation, the State charged Johnson with murder with the use of a deadly weapon and counsel was appointed to represent him. Counsel's investigation revealed that Johnson had a history of bizarre behavior. For example, Johnson had previously contacted an LVMPD officer complaining that there was a conspiracy in the community and that members of an Oakland "cult type situation" were after him. Johnson told the officer that he had sent letters to various public and police agencies requesting that they investigate the conspiracy. Johnson had also sent letters to President Clinton, Mrs. Clinton, and members of Congress warning them of a dangerous Oakland gang. He also claimed that Hightower may have been involved in the conspiracy and had killed people in Oakland.

Due to this unusual behavior, Johnson's first public defender arranged a psychiatric examination. One of the initial examining experts, Dr. Rockenbeck, diagnosed Johnson as having symptoms of a serious delusional disorder that interfered with his ability to function socially, as well as in the trial process. Although Dr. Rockenbeck's assessment indicated that Johnson understood the charges against him and trial procedure, his preliminary diagnosis raised questions about whether Johnson was able to accept the assistance of any attorney who did not embrace Johnson's delusional beliefs. Accordingly, on October 6, 1995, the district court remanded Johnson to the state mental health facility at Lakes Crossing for a thorough sanity commission evaluation of his competence to stand trial.[3]

At Lakes Crossing, three psychiatrists, Dr. Howle, Dr. Tanenbaum, and Dr. Rich, all found Johnson to be competent to stand trial and to assist in his defense. Based on these findings, Johnson's new court-appointed public defender in the proceedings below withdrew his request for a full sanity commission competency hearing and specifically indicated on the record that he was satisfied "beyond a reasonable doubt that [Johnson] was competent" to proceed to trial. Thereafter, Johnson was arraigned and pleaded not guilty. The district court also permitted his counsel to enter a plea of not guilty by reason of insanity on Johnson's behalf.

In response to his counsel's entry of the insanity plea, Johnson renewed an earlier proper person motion to remove his counsel and to represent himself. On September 18, 1996, the district court conducted an extensive *Faretta*[4] canvas. The court fully explained, and Johnson acknowledged that he understood, the dangers of self-representation, as well as the elements of the crime

---

[3]*See* NRS 178.400-.465.

[4]*See Faretta v. California,* 422 U.S. 806 (1975); *see also* SCR 253.

with which he was charged. The court's canvas further established that Johnson understood that he was charged with first-degree murder, meaning "premeditated, deliberate murder with malice," that a conviction of first-degree murder might result in life imprisonment, and that his possible defenses included not guilty by reason of insanity and self-defense.

The transcript of the *Faretta* canvas also reflects, however, that Johnson's primary motivation for wanting to represent himself was his counsel's insistence on presenting an insanity defense. For example, Johnson expressed his dissatisfaction with counsel based on their differences regarding the insanity issue:

> I'd like to have a defensive counsel, not—no one from the public defender's office. Based on the incompetency issue, based on our differences, our conflict of interests. I would like to have someone other than the public defender's office.

With respect to his relationship with counsel, Johnson further stated: "I think we have a legal conflict based on the not guilty by reason of insanity issue your honor."

Moreover, due to this conflict, defense counsel explained that if the court permitted Johnson to represent himself, counsel felt he could not ethically act as standby counsel. Specifically, counsel noted that Johnson adamantly denied he was insane, and if Johnson were to act as his own counsel, counsel was certain that Johnson would withdraw the insanity defense. Under those circumstances, counsel argued, he could not ethically serve as "backup" counsel "because I know that a not guilty by reason of insanity defense has to be put forth, and he [Johnson] won't let me do it."[5]

At the conclusion of this hearing, the district court ruled that Johnson had "passed the test of the *Faretta* canvas" and could represent himself. Despite counsel's objections, the court appointed him to act as standby counsel. Nonetheless, the court expressed willingness to further consider counsel's suggestion of a "creative" solution to his perceived "ethical" dilemma. Specifically, counsel suggested that if the court appointed him as Johnson's co-counsel, he could assert an insanity defense while Johnson continued to act on his own behalf in presenting other matters, such as his claim of self-defense. Counsel argued that the defense of not guilty by reason of insanity was "completely consistent" with Johnson's theory of self-defense. On October 2, 1996, the district court revisited the issue, modified its earlier

---

[5]Although the issue is not specifically addressed by the parties to this appeal, we note that we are unaware of any ethical or other legal proscription that would have prevented counsel from serving as standby counsel under the circumstances presented.

decision by adopting counsel's "co-counsel" solution, and ordered counsel to serve as Johnson's co-counsel for the purpose of presenting an insanity defense. After the district court announced this decision, Johnson placed his objections to the ruling on the record:

> Johnson: That's a total conflict of interest. I mean, we—we—I feel there's no reason to even use the term insanity in the defense. I feel—
>
> The Court: [Defense counsel] has an ethical obligation to do what he has to do. And you, sir, [have] the right to represent yourself—
>
> Johnson: Yes.
>
> The Court: —on the charges, and that's what I'm doing. I'm letting you represent yourself on the charges, sir. Now, [defense counsel] will serve a dual function. He will serve as standby counsel for your personal defense. He will serve as counsel for the not guilty by reason of insanity defense, if, in fact, that becomes viable during the course of these proceedings. I don't know how I can explain myself any further than that. That's what I'm going to do. Okay?
>
> Johnson: If that's what you're gonna' do, I can't argue with that. All I can do is make a motion again to dismiss counsel.

At another pretrial hearing on October 11, 1996, concerns resurfaced respecting Johnson's delusional belief system, his competence to proceed to trial, and his competence to represent himself as co-counsel. Specifically, the prosecutor voiced his increasing concern that Johnson might be "laboring under some sort of delusion, either intentionally or unintentionally," and requested the court to appoint some professionals to examine Johnson:

> I do think that the court should appoint some professionals to examine Mr. Johnson. . . .
>
> I personally have come to the conclusion now, that although he is competent to assist counsel, that he is not competent—my personal opinion—he's not competent to represent himself.

Subsequently, on October 25, 1996, the district court ordered Johnson returned to the Lakes Crossing facility for another sanity commission evaluation.

On February 19, 1997, the district court conducted an evidentiary hearing on the competency issue. Defense counsel and the

prosecutor extensively questioned Dr. Howle, Dr. Rich, and Dr. Tanenbaum regarding their further findings. Again, the doctors all agreed that Johnson understood the proceedings against him and that he was mentally competent to stand trial. Although Dr. Howle and Dr. Tanenbaum diagnosed Johnson as suffering from a delusional disorder, they concluded that his condition did not necessarily render him incompetent to stand trial. Dr. Howle testified, however, that Johnson's competency was more "fluid than static," and that "he may be more competent on one day than another." Dr. Howle also conceded that a trial was a stressful situation and that Johnson's mental "stability would certainly be subject to question during trial." The doctor noted parenthetically, "I have heard of cases where an individual was evaluated daily to determine if they were competent on that particular day." In discussing the effect of Johnson's delusional condition on his continued competence and ability to assist counsel throughout trial, Dr. Tanenbaum testified that it was a "very difficult question," and that he could not "guarantee" Johnson's continued ability to do so.

On March 19, 1997, after hearing oral argument from counsel and reviewing the psychiatric reports, the district court revoked its order allowing Johnson to represent himself as "co-counsel," and ordered defense counsel to serve as the sole counsel for the defense. The district court first found that Johnson was competent to stand trial. The district court further indicated, however, that Johnson's competency was becoming more and more "tenuous" as the trial date approached, and that Johnson's interests would best be served by leaving the presentation of the claims of self-defense and insanity solely up to his counsel:

> Because during the course of this trial there may come a time when [defense counsel] will have to put on a defense adverse to your own particular personal beliefs, but in what he feels is a required proffer of defense, such as not guilty by reason of insanity, if it comes to that point. Right now, as you indicated, or as you heard [defense counsel] express his plans to put up a self-defense argument, which is exactly what you've been talking about all along. But if it becomes necessary, [defense counsel] has indicated he wants to have the ability to interpose any other defense, i.e. not guilty by reason of insanity, if he thinks it's appropriate at the time.

> I also agree with counsel for both the State and the defense, that as this case . . . closer approaches trial, as reflected in the notes of the doctors who examined you, the psychiatrists, they've said that your competency has become less tenuous—or became more tenuous, I should say, the closer we approach trial. They have made the—they made

that observation in their examination of you. They made that statement.

Therefore, I think to protect your interest . . . I'm going to have [defense counsel] designated as the sole attorney representing your interest at this time.

Defense counsel thereafter represented Johnson throughout the trial and presented a claim of self-defense, as well as a defense of not guilty by reason of insanity. The jury found Johnson guilty of second-degree murder with the use of a deadly weapon. Following the verdict, Johnson filed a timely motion for a new trial based, in part, on the State's failure to produce the original eight-plex Caesar's videotape. The district court denied the motion and sentenced Johnson to serve two consecutive terms of life in the Nevada State Prison with the possibility of parole. This appeal followed.

## DISCUSSION

### Defense counsel's assertion of the insanity defense

Johnson contends that the actions of his trial counsel deprived him of his Sixth Amendment right to the meaningful assistance of counsel. The main thrust of Johnson's contention is that his counsel's actions at trial undermined the claim of self-defense that Johnson wanted to present. In the context of this contention, however, Johnson emphasizes that his counsel interposed an insanity defense against Johnson's express objections.

Although we do not directly address the precise ineffective assistance of counsel claim posed by Johnson, *i.e.,* that counsel undermined Johnson's claim of self-defense, we do conclude that trial counsel's presentation of the insanity defense against Johnson's express objections was *per se* improper. We further conclude that such an error is not subject to harmless error analysis because it is a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."[6] Therefore, we conclude, the assertion of the insanity defense under these circumstances constitutes reversible error.

We note initially that claims regarding legal representation provided to an accused at trial are generally more appropriately

---

[6]*See Arizona v. Fulminante,* 499 U.S. 279, 310 (1991); *see also State v. Bean,* 762 A.2d 1259, 1268 (Vt. 2000) (holding that the forced imposition of the insanity defense over a defendant's objection is "structural error" and grounds for reversal of the conviction) (citing *Jacobs v. Commonwealth,* 870 S.W.2d 412, 418 (Ky. 1994); *Treece v. State,* 547 A.2d 1054, 1063 (Md. 1988); *State v. Jones,* 664 P.2d 1216, 1223 (Wash. 1983)).

raised in the first instance in a post-conviction proceeding where the district court can conduct an evidentiary hearing to review and resolve factual uncertainties.[7] In the instant case, however, there is no factual dispute over whether trial counsel presented the insanity defense against Johnson's wishes. As the State's answering brief observes, the record is clear that Johnson "did not want to proceed with an insanity defense." Thus, the issue presented is purely one of law, and an evidentiary hearing below would be of little value.

Further, the record reflects that Johnson asserted his right to self-representation mainly because of the "conflict of interests" arising out of his differences with his counsel over the insanity defense. Thus, the issue of whether trial counsel improperly asserted the defense against Johnson's wishes is closely intertwined with Johnson's additional contention on appeal that the district court erroneously deprived him of his Sixth Amendment right to represent himself. We also emphasize that Johnson is represented on appeal by counsel other than trial counsel. Therefore, appellate counsel has no conflict of interests with respect to presentation of issues involving the effective assistance of trial counsel.

Accordingly, we conclude that the policy concerns underlying this court's reluctance to review most Sixth Amendment ineffective assistance of counsel claims on direct appeal are not implicated here. We have therefore elected to address the merits of this issue on direct appeal.[8]

In *State v. Bean,* the Vermont Supreme Court recently addressed a similar fact pattern and characterized the issue presented as: "whether the decision to raise an insanity defense is one involving the objectives of representation, left to the client, or the means of representation, properly exercised by the lawyer."[9] Although we have never directly addressed this precise issue, in *Raquepaw v. State* we recognized that certain fundamental decisions can only be made by the accused:

> The accused has the ultimate authority to make certain fundamental decisions regarding the case, such as whether to plead guilty, waive a jury, testify on one's own behalf, or

---

[7]*See Gibbons v. State,* 97 Nev. 520, 634 P.2d 1214 (1981).

[8]*Cf. Jones v. State,* 110 Nev. 730, 877 P.2d 1052 (1994) (concluding that a post-conviction evidentiary hearing on a claim of ineffective assistance was not necessary where counsel's actions were a matter of record, not disputed, and *per se* improper); *see also Bean,* 762 A.2d at 1266-68 (where record evidence established clear disagreement between counsel and defendant on interposition of insanity defense, the court reached the merits of the issue on direct appeal rather than deferring matter for post-conviction hearing).

[9]*Bean,* 762 A.2d at 1265.

take an appeal. *Jones v. Barnes,* 463 U.S. 745, 751 (1983). An attorney may not speak for a client on these decisions without consultation. *See Johnson v. Duckworth,* 793 F.2d 898 (7th Cir. 1986), *cert. denied,* 479 U.S. 937 (1986). Counsel cannot waive these basic trial rights over a client's objection. The right of confrontation is such a right and cannot be waived over objection. *Don v. Nix,* 886 F.2d 203, 207 (8th Cir. 1989).[10]

Similarly, in *Faretta,* the United States Supreme Court recognized that "[t]he right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails."[11] The Court further emphasized that:

> It is the defendant . . . who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."[12]

In *Commonwealth v. Federici,* after reiterating that under *Faretta* a defendant's choice to waive counsel must be honored, the Massachusetts Supreme Judicial Court continued: "[w]e see no reason to afford lesser protection to the defendant's choice not to label himself 'criminally insane' where the defendant has been found competent and has been fully advised beforehand of the consequences of his actions by both defense counsel and the judge."[13] The Massachusetts court also noted that "[t]he majority of States honor a competent defendant's choice to forgo a defense strategy that asserts, in any way, that he or she was not guilty of the crime charged by reason of insanity—even over defense counsel's objections."[14]

---

[10]*See Raquepaw v. State,* 108 Nev. 1020, 1022-23, 843 P.2d 364, 366 (1992), *overruled on other grounds by DeRosa v. Dist. Ct.,* 115 Nev. 225, 985 P.2d 157 (1999).

[11]*Faretta,* 422 U.S. at 819-20.

[12]*Id.* at 834 (quoting *Illinois v. Allen,* 397 U.S. 337, 350-351 (Brennan, J., concurring)).

[13]*See Commonwealth v. Federici,* 696 N.E.2d 111, 115 (Mass. 1998).

[14]*Id.* at 115 n.4 (citing *United States v. Marble,* 940 F.2d 1543, 1547-48 (D.C. Cir. 1991) (court must honor competent defendant's decision not to raise insanity defense); *People v. Geddes,* 1 Cal. Rptr. 2d 886 (Ct. App. 1991) (defense based on insanity is a "personal decision" for competent defendant despite defense counsel's disagreement); *State v. Lowenfield,* 495 So. 2d 1245, 1252 (La. 1985) (counsel must acquiesce to competent defendant's informed decision to forgo insanity defense); *Treece v. State,* 547 A.2d 1054 (Md. 1988) (defense counsel must honor competent defendant's choice); *State v. Khan,* 417 A.2d 585 (N.J. Super. Ct. App. Div. 1980) (competent defendant permitted to forgo defense based on insanity); *State v. Jones,*

Our review of the relevant authorities cited in *Federici* and *Bean* reveals that three fundamental concerns are frequently noted in support of the conclusion that the final authority to assert or forgo a defense of insanity ultimately resides with the defendant personally. First, the insanity defense is essentially a plea of not guilty by reason of insanity, and as such, it should be entered only by the defendant personally or by counsel after the defendant has consented.[15] Second, an acquittal on the basis of insanity may result in long-term institutionalization, and the consequences of a choice between a possible commitment to a mental health institution or to prison "are so grave and personal that a competent defendant should have the right to make his or her own decision as to whether to interpose that plea."[16] Third, the social stigmatization that may attach to an assertion or adjudication of insanity also weighs in favor of leaving the final decision of whether to assert an insanity defense to the competent defendant and not to counsel.[17]

Although we acknowledge the minority position on this issue, we conclude that the minority view does not give sufficient consideration to these concerns or properly distinguish between the objectives of representation, which should be left to the client, and the means of representation, which remain within counsel's control.[18] In our view, the majority rule is the better reasoned position. Accordingly, we adopt the view of the majority of jurisdictions and hold that if a defendant is mentally competent to stand trial, as the district court found in this case, the defendant has the absolute right to prohibit defense counsel from interposing an insanity defense. Alternatively, if a defendant is not mentally competent to make that decision, then the defendant is not competent to stand trial in the first instance.[19] Moreover, we agree that the forced imposition of the insanity defense over the express objections of the defendant is structural error requiring reversal.[20]

664 P.2d 1216 (Wash. 1983) (respect for defendant's autonomy requires that competent defendant determine whether to assert plea); *see also Bean,* 762 A.2d at 1267 (citing additional cases supporting majority view).

[15]*See Bean,* 762 A.2d at 1266 (the decision of what pleas to enter must be made by the defendant after full consultation with counsel) (citing 1 American Bar Ass'n Standards for Criminal Justice § 4-5.2(a)(i) (2d ed. 1980)).

[16]*See Treece,* 547 A.2d at 1060.

[17]*Id.* at 1059-60.

[18]The State's answering brief cites a case that is representative of the minority rule. *See People v. Anderson,* 641 N.E.2d 591 (Ill. Ct. App. 1994).

[19]*See, e.g., Godinez v. Moran,* 509 U.S. 389, 400-01 (1993) (stating that the standards of competency to stand trial and waive counsel are identical).

[20]*See Bean,* 762 A.2d at 1268.

Therefore, because trial counsel in the instant case asserted the insanity defense against Johnson's express objections, we reverse the conviction and remand this matter for further proceedings.

## The right to waive counsel

Johnson also contends that, under *Faretta,* the district court erroneously ruled that he could not represent himself at trial. Although our resolution of the issue discussed above renders it unnecessary to address this contention, for the benefit of the trial court, we briefly discuss the parameters of a defendant's entitlement to self-representation in the event a similar question arises again on remand.

We begin by reiterating that under the holdings of *Faretta* and *Godinez v. Moran,* a defendant who lacks the mental capacity to waive the right to counsel is *per force* incompetent to stand trial.[21] Although we are not entirely convinced that there are no qualitative distinctions between mental competency to stand trial and to represent oneself, we are not free to ignore United States Supreme Court precedent on a federal constitutional question.

Assuming a defendant has been properly found to be competent to stand trial and to waive counsel, the next inquiry is whether the defendant's waiver is knowing, voluntary and intelligent.[22] As we noted in *Tanksley v. State,* the *Faretta* canvas is intended to address this aspect of the waiver by apprising the defendant fully of the risks of self-representation and of the nature of the charged crime so that the defendant's decision is made with a "clear comprehension of the attendant risks."[23]

In the instant case, the district court expressly found that Johnson was competent to stand trial. Thus, in the absence of some indication that Johnson's attempt to waive counsel was not knowing, intelligent and voluntary, or that some other factor warranted denial of the right to self-representation under this court's holding in *Tanksley,* the district court could not properly preclude Johnson from waiving his right to counsel.

Our review of the canvas reveals that Johnson's waiver of coun-

---

[21]*See Godinez,* 509 U.S. at 400-01 (holding that the standards of mental competency to stand trial and waive counsel are identical; but the waiver of counsel must also be knowing, intelligent, and voluntary).

[22]*Id.*

[23]*See Tanksley v. State,* 113 Nev. 997, 1001, 946 P.2d 148, 150 (1997) (quoting *Graves v. State,* 112 Nev. 118, 124, 912 P.2d 234, 238 (1996)).

sel was knowing and intelligent. Johnson's responses evinced his clear understanding of the disadvantages of self-representation, including the risks and complexities of the particular case. The issue of whether Johnson's attempted waiver of counsel was voluntary, however, is not so clear. As the facts set forth above indicate, trial counsel's insistence on presenting the insanity defense over Johnson's objections appears to have been a primary, if not the sole, motivation for Johnson's assertion of his right to represent himself. Thus, because as we have held today, defense counsel must honor a competent defendant's choice regarding the defense of insanity, Johnson's assertion of the right to represent himself may not have been entirely voluntary.[24] In other words, Johnson's decision to assert his right to represent himself was arguably coerced by counsel's and the district court's decisions to go forward with the insanity defense against Johnson's express objections.

But more importantly, what takes this case out of the simple formula (mandating that mental competence to stand trial necessarily constitutes mental competence to waive counsel) is the expert testimony that, while Johnson was competent to stand trial and to validly waive counsel at the time of the canvas and just prior to trial, his mental condition and stability were fluid and changeable. Dr. Howle testified, for example, that Johnson's mental stability was "more fluid than static," that "he may be more competent on one day than another," and that Johnson's mental stability "would certainly be subject to question during trial." In discussing the effect of Johnson's delusional condition on his continued competence and ability to assist counsel throughout trial, Dr. Tanenbaum testified that it was a "very difficult question," and that he could not "guarantee" Johnson's continued ability to do so. Thus, the district court's decision to deny Johnson the right to proceed as his own counsel appears to have been premised, at least in part, on this testimony indicating that as the trial date approached, Johnson's mental competence was becoming more and more tenuous.

In our view, and under this court's holding in *Tanksley,* the district court properly denied Johnson his *Faretta* rights in these circumstances. More specifically, *Tanksley* held that a defendant may be denied the right to self-representation where the request is untimely, equivocal, made for the purpose of delay, or *would*

---

[24]*See Godinez,* 509 U.S. at 401 n.12 (the purpose of the inquiry under *Faretta* into whether a defendant's waiver of the right to counsel is knowing and voluntary "is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and *whether the decision is uncoerced*") (emphases added).

*result in disruption of the judicial proceeding.*[25] As a logical extension of the *Tanksley* line of cases, we conclude that a district court will not necessarily violate *Faretta* or *Godinez* if it bases its decision to deny a defendant the right to self-representation on a factually supported and well-documented finding that there is a substantial likelihood that continued self-representation will eventually render a competent defendant incompetent to continue standing trial, or unable to abide by rules of procedure or courtroom protocol.[26]

For example, the expert testimony in this case indicated that if Johnson continued to represent himself during trial, he might well succumb to the added stress of self-representation and deteriorate to the point where it would become necessary to continuously disrupt the proceedings to monitor his "present" mental abilities and competence. Based on this testimony and the district court's own observations of Johnson's increasingly tenuous condition, the court could have found that if it permitted Johnson to continue to act as his own counsel, there was a substantial likelihood that the fluctuating intensity of his delusional belief system would have eventually led either to his inability to abide by "rules of procedure and courtroom protocol," or to a complete loss of his mental competency to proceed, thereby necessitating declaration of a mistrial.[27]

The case of *Savage v. Estelle,* which was cited with approval in *Tanksley,* supports this conclusion. In *Savage,* the court held that a defendant whose severe speech impediment made him unable to communicate effectively with the jury was properly denied his *Faretta* rights.[28] The court interpreted the United States Supreme Court's holding in *McKaskle v. Wiggins* "as permitting denials of the *Faretta* right to an accused who is unable to abide by rules of courtroom procedure, just as the right may be denied to those who are unwilling so to do."[29] In theory, if a physical impairment can warrant a restriction on one's *Faretta* rights because the impairment renders a defendant unable to abide by rules of procedure or protocol, then a mental impairment, which does not vitiate men-

---

[25]*Tanksley,* 113 Nev. at 1001, 946 P.2d at 150; *see also Lyons v. State,* 106 Nev. 438, 443-44, 796 P.2d 210, 213 (1990).

[26]*See, e.g., Savage v. Estelle,* 924 F.2d 1459, 1463 (9th Cir. 1990) (a partial denial of the right to self-representation is permissible if an accused does not "knowingly and intelligently forgo[ ] his right to counsel" or is not "able and willing to abide by rules of procedure and courtroom protocol") (quoting *McKaskle v. Wiggins,* 465 U.S. 168, 173 (1984)).

[27]*See, e.g., Tanksley,* 113 Nev. at 1001, 946 P.2d at 150 (citing *Savage,* 924 F.2d at 1464; *McKaskle,* 465 U.S. at 173; *United States v. Flewitt,* 874 F.2d 669, 674 (9th Cir. 1989)).

[28]*Savage,* 924 F.2d at 1464-67.

[29]*Id.* at 1466.

tal competence to stand trial or waive counsel, may similarly render a defendant unable to abide by rules of procedure or protocol.

We acknowledge that a fine line may separate the defendant who is mentally competent to proceed to trial from one who is unable or unwilling to abide by rules of procedure or protocol due to a mental impairment. Nonetheless, we are persuaded that, where the evidence clearly supports such a finding, the trial courts may properly deny the *Faretta* right to defendants whose mental impairments do not render them incapable of standing trial, but do affect their abilities and perceptions to such an extent that they are ultimately disruptive to the trial process and unable to adhere to rules of procedure or protocol.

## The denial of the motion for new trial

Johnson argues the district court erred in denying his motion for a new trial because the State failed to preserve exculpatory evidence, namely the eight-plex Caesar's videotape. The State never had possession or control of the eight-plex tape. Thus, this issue is more properly addressed as a "failure to gather" the evidence.[30]

To establish a due process violation based upon the State's failure to gather evidence, a defendant must show: (1) that the State failed to gather evidence that is constitutionally material, *i.e.,* that raises a reasonable probability of a different result if it had been available to the defense; and (2) that the failure to gather the evidence was the result of gross negligence or a bad faith attempt to prejudice the defendant's case.[31] We conclude that Johnson failed to establish a due process violation, and that, therefore, the district court did not abuse its discretion in denying the motion.[32]

First, Johnson has failed to demonstrate that the tape was constitutionally material to his defense. Although he contends that the eight-plex tape would have shown that Hightower was the initial aggressor, the record does not support this contention. Numerous

---

[30]*See Steese v. State,* 114 Nev. 479, 491, 960 P.2d 321, 329 (1998) (where police never had control of the evidence, the issue involved a failure to gather evidence, not a failure to preserve evidence); *Daniels v. State,* 114 Nev. 261, 266-67, 956 P.2d 111, 115 (1998) (distinguishing legal analyses applicable to a failure to preserve and a failure to gather evidence).

[31]*See Steese,* 114 Nev. at 491, 960 P.2d at 329 (citing *Daniels,* 114 Nev. at 267, 956 P.2d at 115; *State v. Ware,* 881 P.2d 679, 685 (N.M. 1994)).

[32]*See Lightford v. State,* 91 Nev. 482, 483, 538 P.2d 585, 586 (1975) (the district court's ruling on a motion for new trial will not be disturbed on appeal absent an abuse of discretion).

eyewitnesses testified at trial that Johnson shot Hightower without provocation. Additionally, Lambright testified that he viewed the entire eight-plex tape, and at the request of the LVMPD, he copied the relevant portions of the tape. Lambright verified that all the taped portions of the killing were transferred onto the standard VCR tape presented at trial. Accordingly, Johnson has failed to demonstrate a reasonable probability of a different result even if the eight-plex tape had been gathered by the police and made available to the defense.

Second, Johnson has not established that the State's failure to obtain the eight-plex tape was the result of negligence, gross negligence, or bad faith. As noted, immediately after the murder, an LVMPD officer asked Lambright to provide any surveillance tapes showing the killing. Lambright complied and transferred the relevant portions to a standard VCR tape because the eight-plex tape could not be viewed on a standard VCR. Thus, even assuming that the eight-plex tape was material, the record does not show that the State acted negligently or in bad faith. Accordingly, we conclude that the district court did not abuse its discretion in denying the motion for a new trial.

## CONCLUSION

Because defense counsel in the proceedings below interposed an insanity defense against Johnson's express objections, we reverse and remand this matter for further proceedings. On remand, the district court will no doubt revisit whether Johnson's delusional belief system renders him incompetent to stand trial. Assuming that Johnson is competent to stand trial, he may not be compelled against his wishes to assert the defense of insanity. Further, unless Johnson is found to be incompetent to stand trial, or the fluctuating intensity of his delusional condition proves substantially likely to disrupt the trial or render him unable to abide by court procedures or protocol, any request for self-representation should be granted if the requisite *Faretta* canvas discloses that his decision is knowing, intelligent and voluntary and that he has made his decision with a clear comprehension of the attendant risks. We reject Johnson's contention that the district court erred in denying the motion for a new trial.