OPINION
By the Court,
Cherry, J.:
This appeal presents the issue of whether appellant Jerry Hooks knowingly, intelligently, and voluntarily waived his right to counsel when he exercised his right to represent himself at trial. Because the district court did not adequately canvass Hooks regarding his waiver, pursuant to Faretta v. California,[1] and the record as a whole does not sufficiently establish a valid waiver, we reverse the judgment of conviction. In doing so, we clarify that a Faretta canvass conducted in justice court before a preliminary hearing will rarely be sufficient, standing alone, to establish a valid waiver of the right to counsel at trial. And although a trial judge’s failure to conduct a thorough Faretta canvass does not require reversal when the record as a whole establishes a valid waiver of the right to counsel, we again urge the district courts to conduct thorough inquiries to ensure that criminal defendants understand the dangers and consequences of self-representation and to make findings regarding the validity of any waiver of the right to counsel.[2]

FACTS

On November 13, 2003, appellant Jerry Hooks was charged, in a criminal complaint, with three counts of sale of a controlled substance. The State later amended the complaint to replace the third count of sale of a controlled substance with one count of giving away a controlled substance. The State alleged that Hooks sold cocaine to an undercover police officer on two occasions and gave the officer cocaine on another occasion.
When Hooks appeared in custody before the justice court for an arraignment on November 8, 2003, the justice court appointed the public defender to represent him. Subsequently, Hooks appeared for his preliminary hearing and informed the court that he wished to represent himself. The justice court asked Hooks a series of questions before allowing Hooks to represent himself. The justice court’s inquiries related to Hooks’ personal background and level *50 of education, as well as Hooks’ understanding of the potential sentence for the charges. Specifically, the following dialogue occurred during the justice court’s canvass:
HOOKS: I would like a Faretta canvass, please.
JUSTICE COURT: You have had one, two, three, four, five felony convictions anyway so you know the system.
Do you know how to subpoena cases?
HOOKS: That is a problem, your Honor. This is a problem that I need assistance with. We have — do you have a private investigator, should need be.
JUSTICE COURT: No, No. I’m going to have the public defender represent you.
HOOKS: You’re saying I’m not qualified?
JUSTICE COURT: Yes. Yes.
MR. HASTINGS: Judge, you probably need to have the canvass and ask him the questions.
JUSTICE COURT: I just asked him. I got to the point where I feel that he isn’t qualified.
HOOKS: Well, yes, I can serve subpoenas.
JUSTICE COURT: How far did you go in school?
HOOKS: Fourteen.
JUSTICE COURT: Do you understand you will be going against a prosecutor that has been trained in the law, that you’ll get no special treatment.
Do you understand that?
HOOKS: Well, I understand that there are [sic] certain leniency given toward pro se.
JUSTICE COURT: No.
HOOKS: Okay. Yes, sir.
JUSTICE COURT: You’re going to be treated just like I treat any lawyer in here.
HOOKS: Okay, your Honor.
JUSTICE COURT: You don’t get special time at the library because you represent yourself.
JUSTICE COURT: . . . [H]ow much time are you looking at if you get convicted of this?
HOOKS: Fifteen years.
JUSTICE COURT: How much time are you looking at? Not him, you.
*51 HOOKS: I don’t know. I don’t know what the crime carries. I haven’t been given anything. I haven’t been given any discovery. I haven’t had an opportunity.
JUSTICE COURT: It’s not in discovery.
Do you understand that the supreme court thinks its foolish for a person to represent themself?
HOOKS: Yes, sir. I do understand that.
JUSTICE COURT: I think that it’s foolish. As a former Public Defender, even if an attorney is accused of a crime, if he represents himself he has a fool for a client and a fool for an attorney.
Do you understand that?
HOOKS: Yes, I do understand.
JUSTICE COURT: You get no special treatment?
HOOKS: I do understand that.
JUSTICE COURT: All right.
HOOKS: And no assistance.
JUSTICE COURT: No, you’re going to do this one on your own. Is that what you want to do? You want to do this?
HOOKS: Yes, sir. That’s within the law, yes, sir.
At the conclusion of the canvass, the justice court allowed Hooks to represent himself and appointed standby counsel. Following a continuance, the justice court conducted the preliminary hearing and then bound Hooks over to the district court for trial.
In the district court, Hooks again requested that he be permitted to represent himself. At Hooks’ initial appearance in district court, he and his standby counsel, Eric Goodman, informed the court that Hooks was representing himself. The district court acknowledged that Hooks had a right to represent himself but cautioned Hooks to heed the advice of his standby counsel. Although the district court did not perform a Faretta canvass at that time, the district court did inquire into Hooks’ education level and understanding of the charges as follows:
DISTRICT COURT: And how far did you go in school?
HOOKS: Fourteen years.
DISTRICT COURT: So you read, write and understand the English language, is that correct?
HOOKS: That is correct.
DISTRICT COURT: And you understand, sir, that you’ve been charged with Sale-three counts of Sale of a Controlled Substance?
*52 HOOKS: Yes, ma’am.
DISTRICT COURT: And have you talked to Mr. Goodman at all about this?
HOOKS: Yes, I have.
At that time, the district court appointed Goodman to assist Hooks with the trial.
Goodman later moved to withdraw from the case, and upon a hearing on Goodman’s motion to withdraw, the district court once again indicated to Hooks the importance of standby counsel given the difficulty of self-representation. The district court again asked Hooks if he wished to represent himself and informed him that, if he did, the court must conduct a Faretta canvass. Hooks responded that he had been canvassed in justice court. The district court then stated,
See, and you know what, sir, that just shows me how important the procedural components that I just discussed are. That’s a whole different court, a whole different jurisdiction. He’s Justice Court. We’re District Court.
If you want to represent yourself, I’m asking you if that is your desire here today. Is that your desire to represent yourself?
In response, Hooks indicated that he wanted to represent himself. The district court then indicated it would conduct a Faretta canvass at the upcoming April 12, 2004, hearing.
At the hearing on April 12, 2004, the district court appointed new standby counsel for Hooks and indicated that it would allow Hooks to represent himself subject to a Faretta canvass. Standby counsel requested a one-week continuance to meet with Hooks. The district court granted the request and indicated that it would conduct the Faretta canvass at Hooks’ next court appearance. The district court, however, did not conduct a Faretta canvass during any of the subsequent proceedings.
Following a one-day trial, the jury returned a verdict finding Hooks guilty on all three counts. The district court subsequently adjudicated Hooks as a habitual criminal and sentenced him to three concurrent prison terms of life with the possibility of parole in ten years.
Hooks now appeals from the judgment of conviction and argues that the district court’s failure to conduct a thorough Faretta canvass before permitting him to represent himself at trial warrants reversal of the judgment of conviction. Although we conclude that the district court’s failure to conduct a thorough canvass does not per se require reversal, we nonetheless conclude that reversal is warranted in this case because the record as a whole does not *53 establish a knowing, intelligent, and voluntary waiver of the right to counsel.[3]

DISCUSSION

Hooks argues that the district court’s failure to conduct a thorough Faretta canvass violated his constitutional rights to counsel and a fair trial. The State contends that the record as a whole demonstrates that Hooks made a knowing, intelligent, and voluntary waiver of his right to counsel. In particular, the State focuses on the following: (1) the justice court’s canvass before the preliminary hearing; (2) the justice court’s conclusion that Hooks’ waiver was knowing, intelligent, and voluntary; (3) Hooks’ acknowledgment in district court that he had been canvassed in justice court; and (4) Hooks’ reassertion of his desire to represent himself at trial in the district court. We disagree with the State’s assessment of the record and conclude that the record as a whole does not show that Hooks knew his rights and the potential consequences of self-representation. Therefore, Hooks did not knowingly, intelligently, and voluntarily waive his right to counsel, and he is entitled to a reversal of his judgment of conviction. Further, we conclude that a Faretta canvass before a preliminary hearing in justice court will rarely be sufficient, standing alone, to establish a knowing, intelligent, and voluntary waiver of the right to counsel at trial in the district court.
As the United States Supreme Court has held in Faretta v. California, the Sixth Amendment to the United States Constitution provides a criminal defendant the right to self-representation.[4] Because the Sixth Amendment also guarantees the right to counsel, a defendant’s exercise of the right to self-representation necessarily requires a valid waiver of the right to counsel.[5] Thus, in order to exercise the right to self-representation, a criminal defendant *54 must knowingly, intelligently, and voluntarily waive the right to counsel.[6] To knowingly, intelligently, and voluntarily waive the right to counsel, the defendant should, as explained in Faretta, “be made aware of the dangers and disadvantages of self-representation, so that the record will establish that ‘he knows what he is doing and his choice is made with eyes open.’ ’ ’[7] The purpose of a Faretta canvass is to apprise “the defendant fully of the risks of self-representation and of the nature of the charged crime so that the defendant’s decision is made with a ‘clear comprehension of the attendant risks.’ ’ ’[8]
The validity of a defendant’s waiver of the right to counsel depends on the facts and circumstances of each case, including the defendant’s background, experience, and conduct.[9] To ensure that a defendant’s waiver is valid, this court in its 1984 decision in Wayne v. State “urged [trial courts] to canvass defendants concerning their waiver of the right to counsel to ensure that [the] waiver is knowing and intelligent and that its validity is clearly reflected on the record.”[10] And subsequently, in 1997, this court adopted a rule setting forth guidelines and procedures that district courts should follow to ensure that a defendant who chooses self-representation has validly waived the right to counsel. In particular, SCR 253(1) provides that when a defendant chooses self-representation, “the court should make a specific, penetrating and comprehensive inquiry of the defendant to determine whether the defendant understands the consequences of his or her decision to proceed without counsel.” And SCR 253(2) identifies some of the dangers, disadvantages, and consequences of self-representation that the court should address in its inquiry. Further areas of suggested inquiry are set forth in SCR 253(3), including the defendant’s understanding of the charges and the possible penalties. As a final matter, the rule requires that the court make findings on the record as to whether the defendant waived the right to counsel *55 “freely, voluntarily and knowingly, and has a full appreciation and understanding of the waiver and its consequences.”[11] We give deference to the district court’s decision to allow the defendant to waive his right to counsel.[12]
In this case, Hooks argues that the district court’s failure to conduct a thorough Faretta canvass requires reversal of his conviction. But as Hooks acknowledges, this court has “rejected the necessity of a mechanical performance of a Faretta canvass.”[13] And, in Graves v. State, this court observed that a canvass addressing specific matters “that go beyond the general requirements of Faretta” is “not constitutionally required for a valid waiver where it is apparent from the record that the defendant was aware of the dangers and disadvantages of self-representation.”[14] Accordingly, this court has stated on several occasions that “[ejven the omission of a canvass is not reversible error if ‘it appears from the whole record that the defendant knew his rights and insisted upon representing himself.’ ”[15] Thus, when reviewing the sufficiency of a waiver of the right to counsel, we must consider the record as a whole, including any canvass by the district court.[16] Nonetheless, as in Wayne, we take this opportunity to again urge the district courts to conduct a thorough inquiry of a defendant who wishes to represent himself and to make findings as to whether the defendant’s waiver of the *56 right to counsel is knowing, intelligent, and voluntary.[17] Although such inquiries take time, they are a far better alternative to a new trial in the event that the record as a whole is insufficient to establish a valid waiver.[18]
Here, the record as a whole does not demonstrate that Hooks made a knowing, intelligent, and voluntary waiver of his right to counsel. Although not dispositive, the district court did not conduct a penetrating and comprehensive inquiry to determine whether Hooks understood his rights and the consequences of his decision to proceed without counsel. The district court on several occasions noted the need for such an inquiry but never conducted one. As a result, we are left with the justice court’s canvass and the record of Hooks’ various appearances in district court.
With respect to the justice court’s inquiry when Hooks waived his right to counsel before the preliminary hearing, the justice court made general inquiries about Hooks’ level of education and advised Hooks of some of the disadvantages of self-representation — namely, that he would not receive any special treatment or access to the library. While this inquiry sheds some light on Hooks’ understanding of the disadvantages of self-representation, we are not convinced that the justice court’s inquiry standing alone is sufficient to demonstrate that Hooks was fully aware of the risks of self-representation and the nature of the charged crimes so that his decision was made with a ‘ ‘ ‘clear comprehension of the attendant risks.’ ”[19] In particular, we note that the purpose of a preliminary hearing and a trial are vastly different and therefore the dangers and disadvantages of self-representation at the two stages are also different.
With respect to the proceedings in district court, the record reveals that the district court only conducted a limited inquiry as to Hooks’ education level and ability to comprehend the English language and issued general warnings about the dangers of self-representation. Additionally, the district court failed to make findings on the record that Hooks knowingly, intelligently, and voluntarily waived his right to counsel before allowing Hooks to *57 represent himself. Other than the district court’s limited inquiry, the record does not demonstrate that Hooks had a sufficient understanding of the dangers, disadvantages, and consequences of representing himself at trial. And of particular significance in this case, it does not appear that Hooks understood the potential sentence when he chose to represent himself. The district court did not warn Hooks when he indicated his desire to represent himself of the potential penalties that he faced, and the record indicates that Hooks was not advised of the habitual criminal enhancement until almost one year after he waived his right to counsel in district court.[20] And at that time, the district court indicated that it would not discuss the enhancement until the sentencing hearing. We also are not convinced that Hooks’ acknowledgment that he had been canvassed in justice court or his repeated assertions of his right to self-representation are sufficient to demonstrate a valid waiver of the right to counsel.[21] The record as a whole is not sufficient to establish a valid waiver, particularly given the U.S. Supreme Court’s mandate that we “indulge in every reasonable presumption against waiver’ ’ of the right to counsel.[22] Because harmless-error analysis does not apply to an invalid waiver of the right to counsel,[23] we *58 must reverse Hooks’ judgment of conviction and remand for a new trial.

CONCLUSION

District courts should conduct a Faretta canvass and make specific findings as to whether a defendant’s waiver of the right to counsel is knowing, intelligent, and voluntary before allowing a defendant to represent himself. Nonetheless, in the absence of such an inquiry, this court need not reverse the judgment of conviction if the record as a whole demonstrates that the defendant’s waiver of the right to counsel was valid. In this case, the district court failed to conduct an adequate inquiry and the record as a whole does not convince us that Hooks knowingly and intelligently waived his right to counsel. In particular, the justice court inquiry in this case was not sufficient to demonstrate a valid waiver given the significant difference in the consequences of waiving counsel at the justice court and district court levels and the fact that Hooks was not aware of the potential habitual criminal sentence until almost one year after the district court granted his request to represent himself. We reverse Hooks’ judgment of conviction, and we remand this matter to the district court for a new trial and further proceedings consistent with this opinion.
Gibbons, C. J., concurs.

 422 U.S. 806 (1975).

 See Wayne v. State, 100 Nev. 582, 585, 691 P.2d 414, 416 (1984); SCR 253.

 Hooks raises three additional issues on appeal: (1) whether his right to a speedy trial was violated, (2) whether the district court erred hy admitting evidence regarding Hooks’ refusal to submit to a DNA test at the detention center, and (3) whether the district court failed to make particularized findings that it was just and proper to sentence Hooks as a habitual criminal. In light of our decision to reverse the judgment of conviction based on the invalid waiver of the right to counsel, we need only address the merits of the speedy-trial claim. Having considered Hooks’ speedy-trial claim, we conclude that his right to a speedy trial was not violated. See Barker v. Wingo, 407 U.S. 514, 530 (1972); see also Prince v. State, 118 Nev. 634, 641, 55 P.3d 947, 951 (2002).

 422 U.S. 806, 807, 818-32 (1975); accord Wayne v. State, 100 Nev. 582, 584, 691 P.2d 414, 415 (1984) (stating that criminal defendant has right to self-representation under the United States and Nevada Constitutions).

 Wayne, 100 Nev. at 584, 691 P.2d at 415; see also U.S. v, Erskine, 355 F.3d 1161, 1167 (9th Cir. 2004).

 Faretta, 422 U.S. at 835.

 Id. (quoting Adams v. United States, 317 U.S. 269, 279 (1942)). A defendant must also be competent to waive the right to counsel. See Johnson v. State, 117 Nev. 153, 164, 17 P.3d 1008, 1016 (2001). Because Hooks does not challenge his competency to waive the right to counsel, we do not address that requirement for a valid waiver.

 Johnson, 117 Nev. at 164, 17 P.3d at 1016 (citing Tanksley v. State, 113 Nev. 997, 1001, 946 P.2d 148, 150 (1997) (quoting Graves v. State, 112 Nev. 118, 124, 912 P.2d 234, 238 (1996))).

 Haberstroh v. State, 109 Nev. 22, 25, 846 P.2d 289, 292 (1993); see also Johnson v. Zerbst, 304 U.S. 458, 464 (1938).

 100 Nev. at 585, 691 P.2d at 416.

 SCR 253(4)(b).

 Graves v. State, 112 Nev. 118, 124, 912 P.2d 234, 238 (1996).

 Id. at 125, 912 P.2d at 238.

 Id. at 125, 912 P.2d at 238-39.

 Id. at 125, 912 P.2d at 238 (quoting Wayne v. State, 100 Nev. 582, 585, 691 P.2d 414, 416 (1984)); see also Hymon v. State, 121 Nev. 200, 212-13, 111 P.3d 1092, 1101 (2005); Arajakis v. State, 108 Nev. 976, 980, 843 P.2d 800, 802-03 (1992).

 We note that there appears to be a split of authority among the federal circuit courts of appeals as to whether the trial court’s failure to conduct a thorough inquiry is per se reversible error. Compare U.S. v. Bush, 404 F.3d 263, 270 (4th Cir. 2005) (indicating that when reviewing the sufficiency of a waiver of the right to counsel, the court considers the whole record), U.S. v. Willie, 941 F.2d 1384, 1388-89 (10th Cir. 1991) (recognizing that ideal practice is for trial judge to conduct comprehensive inquiry on the record but that deficiencies in trial judge’s inquiry do not automatically require reversal when the surrounding facts and circumstances demonstrate a valid waiver), U.S. v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991) (explaining that the question “is not the quality of the trial judge’s inquiry” but the validity of the waiver and therefore the court will not reverse “if the record as a whole demonstrates the defendant knowingly and voluntarily waived his right to counsel”), and U.S. v. Balough, 820 F.2d 1485, 1488 (9th Cir. 1987) (explaining that as a general rule, only the court’s canvass is relevant to waiver analysis but recog *56 nizing “limited exception” when the “record as a whole reveals a knowing and intelligent waiver”), with U.S. v. Jones, 452 F.3d 223, 232 (3d Cir. 2006) (rejecting other circuits’ approach of reviewing record as a whole and instead requiring “[a] complete, on-the-record colloquy with the defendant” as “a significantly better way of protecting the right to counsel than the whole-record approach”).

 See SCR 253.

 See Berkowitz, 927 F.2d at 1383 (discussing the importance of a proper inquiry by the trial judge and concluding that “the few minutes a proper Faretta inquiry normally would take is a worthwhile alternative to a new trial”).

 Johnson v. State, 117 Nev. 153, 164, 17 P.3d 1008, 1016 (2001) (citing Tanksley v. State, 113 Nev. 997, 1001, 946 P.2d 148, 150 (1997) (quoting Graves v. State, 112 Nev. 118, 124, 912 P.2d 234, 238 (1996))).

 Cf. Hymon, 121 Nev. at 214, 111 P.3d at 1102 (rejecting challenge to waiver of counsel on ground that district court did not advise defendant of potential habitual criminal enhancement where record showed possible sentences were explained several times); Arajakis, 108 Nev. at 980, 843 P.2d at 803 (concluding that defendant knowingly and intelligently waived right to counsel where justice and district courts canvassed defendant, defendant signed a Faretta waiver form showing that he understood the consequences of his waiver, and justice and district courts advised defendant of habitual criminal punishment sought by the state); Wayne, 100 Nev. at 586, 691 P.2d at 416 (concluding that record as a whole evidenced defendant’s knowing and intelligent waiver of right to counsel where defendant had represented himself and been acquitted in a prior trial before the same judge, defendant explicitly stated he was aware of dangers and disadvantages of self-representation based on prior experiences, and defendant “was fully informed of and understood the charges against him and the possible penalties for each charge”).

 See U.S. v. Mohawk, 20 F.3d 1480, 1485 (9th Cir. 1994) (“Similarly, that [the defendant] emphatically asserted his desire to represent himself does not mean that this desire was founded on a true appreciation of the dangers of proceeding without counsel.”).

 Brewer v. Williams, 430 U.S. 387, 404 (1977), quoted in U.S. v. Erskine, 355 F.3d 1161, 1167 (9th Cir. 2004) (explaining that Ninth Circuit “evaluates the question with great care”); see also Lawrence v. Warden, 84 Nev. 554, 555, 445 P.2d 156, 157 (1968) (referring to 1948 U.S. Supreme Court case “acknowledging] a strong presumption against waiver of the constitutional right to counsel”); cf. Gallego v. State, 117 Nev. 348, 368, 23 P.3d 227, 241 (2001) (stating in discussion of defendant’s waiver of right to testify that “[c]ourts should indulge every reasonable presumption against waiver” of “fundamental rights”).

 Mohawk, 20 F.3d at 1485 n.4 (“Harmless error analysis is inapplicable to the unconstitutional denial of the right to counsel.”); U.S. v. Allen, 895 F.2d 1577, 1579-80 (10th Cir. 1990) (overruling contrary precedent and holding *58 that harmless-error analysis is inapplicable to waiver of counsel cases); cf. McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984) (“Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amendable to ‘harmless error’ analysis.”).