**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TODD LOWE; JANET LOWE; TOM
HENDERSON; NANCY HENDERSON; J.
ROBERT ANDERSON; CAROLE
ANDERSON; DEAN INGEMANSON,
Trustee of the Dean Ingemanson
Trust; KATHY NELSON, Trustee of
the Kathy Nelson Trust; and
ARTHUR BERLINER,
          *Plaintiffs-Appellants,*

              v.

WASHOE COUNTY, a political
subdivision of the State of
Nevada; JOSH WILSON, Washoe
County Assessor; and BILL
BERRUM, Washoe County
Treasurer,
          *Defendants-Appellees.*

No. 09-15759

D.C. No.
3:08-cv-00217-KJD-
RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted
October 8, 2010—San Francisco, California

Filed December 16, 2010

20219

Before: Robert R. Beezer and Susan P. Graber,
Circuit Judges, and Cormac J. Carney,* District Judge.

Opinion by Judge Graber

---

*The Honorable Cormac J. Carney, United States District Judge for the
Central District of California, sitting by designation.

**COUNSEL**

Suellen Fulstone, Reno, Nevada, for the plaintiffs-appellants.

Nathan J. Edwards, Deputy District Attorney, Reno, Nevada, for the defendants-appellees.

**OPINION**

GRABER, Circuit Judge:

Plaintiffs Todd Lowe, Janet Lowe, Tom Henderson, Nancy Henderson, J. Robert Anderson, Carole Anderson, Dean Ingemanson, Kathy Nelson, and Arthur Berliner own residential real property in Incline Village and Crystal Bay, which are communities located on the North Shore of Lake Tahoe in Washoe County, Nevada. As the putative representatives of a class of approximately 9,000 Incline Village and Crystal Bay property owners, the nine plaintiffs filed a complaint under 42 U.S.C. § 1983 in federal district court against Defendants Washoe County, Washoe County Assessor Josh Wilson, and Washoe County Treasurer Bill Berrum. Plaintiffs allege that the valuation of their Nevada real property used to calculate their ad valorem property taxes for the 2008-09 taxable year violated both the Nevada Constitution and the Due Process

Clause of the U.S. Constitution. They seek declaratory, injunctive, and other appropriate relief. The district court dismissed the complaint for lack of subject matter jurisdiction pursuant to the Tax Injunction Act (the "Act"), 28 U.S.C. § 1341, because a "plain, speedy and efficient remedy" is available in state court. Reviewing de novo, *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1242-43 (9th Cir. 2000), we affirm.

## FACTUAL AND PROCEDURAL HISTORY

### A. *Residents' Past Challenges to the County Assessor's Valuation Methods*

While the present case addresses only the 2008-09 tax year, residents of Incline Village and Crystal Bay, including some of the plaintiffs in this case, previously challenged in state court the valuation methods employed by the Washoe County Assessor. Nevada law provides four levels of review to an aggrieved taxpayer. Property owners who disagree with the County Assessor's valuations of their property may file their challenges for a given tax year with the appropriate County Board of Equalization. Nev. Rev. Stat. §§ 361.340(11), 361.355-.357. If unsuccessful before the County Board, property owners may appeal to the State Board of Equalization. *Id.* § 361.360. Dissatisfied property owners may then seek review of the State Board's decision in Nevada state trial court. *Id.* § 233B.130. If dissatisfied with the trial court decision, taxpayers may appeal to the Nevada Supreme Court. *Id.* § 233B.150.

The County Assessor reappraises taxpayers' real property every five years. *Id.* § 361.260(6). In 2002, the Washoe County Assessor conducted reappraisals of real property in Incline Village and Crystal Bay; those findings served as the base-year appraisals for the following five years beginning with the 2003-04 tax year.

Incline Village and Crystal Bay residents who disagreed with the increase in their 2003-04 property valuations filed individual petitions with the Washoe County Board of Equalization. The residents claimed that the Assessor used valuation methods that were neither promulgated in regulations by the Nevada Tax Commission nor employed elsewhere in Nevada. Though the residents' claims were unsuccessful before the County Board and the State Board, a Nevada trial court reviewed those decisions and held that the 2003-04 tax assessments were void because they violated the state constitution's guarantee of equal and uniform taxation. In 2006, the Nevada Supreme Court affirmed the trial court's decision. *State ex rel. State Bd. of Equalization v. Bakst*, 148 P.3d 717 (Nev. 2006) ( en banc). The Nevada Supreme Court held that the Assessor's valuation methods were invalid under Article 10, Section 1, of the Nevada Constitution, which requires that property be taxed according to a uniform and equal rate of assessment. *Id.* at 721. The court awarded to the 17 individual plaintiff-residents who remained in the case refunds of all taxes attributable to the Assessor's invalid methodologies and ordered that the 2003-04 valuations be rolled back to the 2002-03 level. *Id.* at 726-27.

Incline Village and Crystal Bay taxpayers later filed individual petitions challenging the Washoe County Assessor's 2004-05 valuations, which relied on the same base-year appraisal as that used for the 2003-04 valuations. The County Board denied the taxpayers' petitions, and the State Board affirmed. Again, a state trial court reversed the State Board, declaring the Assessor's methods unconstitutional and the resulting valuations void. Accordingly, the court directed that refunds be paid to the approximately 37 taxpayers who remained in the case. In July 2008, the Nevada Supreme Court affirmed. That court held that the Assessor's methods continued to violate Article 10, Section 1, of the Nevada Constitution because the 2002 reappraisal, previously declared unconstitutional in *Bakst*, also served as the base-year

appraisal for the 2004-05 valuations. *State ex rel. State Bd. of Equalization v. Barta*, 188 P.3d 1092 (Nev. 2008) (en banc).

Incline Village and Crystal Bay residents later filed individual petitions challenging the Washoe County Assessor's 2005-06, 2006-07, and 2007-08 valuations, all of which relied on the same base-year appraisal as that used for the previous two tax years. Those cases remain pending in state trial court. Approximately 1,200 Incline Village and Crystal Bay taxpayers are currently pursuing individual appeals in the 2005-06 case, and approximately 900 already have received partial relief. Approximately 300 residents individually challenged their 2006-07 valuations, and approximately 900 individually challenged their 2007-08 valuations.

## B. *The 2008-09 Tax Year Valuations*

In 2007, the Washoe County Assessor reappraised all Incline Village and Crystal Bay residential real property for the 2008-09 tax year, initiating the next five-year appraisal cycle. Plaintiffs filed a class petition with the County Board. In that petition, Plaintiffs claimed that the Assessor used the same valuation methods in the 2007 reappraisal that previously had been declared unconstitutional by the Nevada Supreme Court in *Bakst* and *Barta*. The County Board denied Plaintiffs' petition on the ground that the Board lacked jurisdiction to hear class petitions. Plaintiffs then filed this suit in the United States District Court for the District of Nevada.

The federal district court granted Defendants' Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. The court reached its ruling after examining the administrative procedures and state court review available to dissatisfied Nevada taxpayers who challenge *ad valorem* taxes. The taxpayers' past successes before the Nevada Supreme Court also persuaded the district court that a "plain, speedy and efficient remedy" was available to Plaintiffs in state court. Plaintiffs timely appealed.

## DISCUSSION

### A.  *The Tax Injunction Act*

**[1]** The Act provides that a district court "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "[T]he statute has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976). The Supreme Court repeatedly has characterized the Act as a " 'broad jurisdictional barrier,' " *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 825 (1997) (quoting *Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 470 (1976)), which "limit[s] drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes," *California v. Grace Brethren Church*, 457 U.S. 393, 408-09 (1982) (internal quotation marks omitted). When applicable, the Act prohibits both declaratory and injunctive relief, *id.* at 408, as well as § 1983 suits for damages, *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 113 (1981).

**[2]** If a "plain, speedy and efficient remedy" is not available in state court, a federal district court may exercise jurisdiction over a party's challenge to a state tax. Federal courts, however, "must construe narrowly [this] exception to the [Act]." *Grace Brethren Church*, 457 U.S. at 413. For the Act's jurisdictional prohibition to apply, the state court remedy need only meet "certain minimal *procedural* criteria." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512 (1981). Specifically, the party challenging the state tax must have access to "a full hearing and judicial determination" of all federal constitutional objections to the tax. *Id.* at 513 (internal quotation marks omitted). The state court remedy need not be " 'the best remedy available or even equal to or better than the

remedy which might be available in the federal courts.' " *Mandel v. Hutchinson*, 494 F.2d 364, 367 (9th Cir. 1974) (quoting *Bland v. McHann*, 463 F.2d 21, 29 (5th Cir. 1972)).

**[3]** For a remedy to be "plain," the procedures available in state court must be certain. A state remedy "is not plain within the meaning of the [Act]. . . 'if there is uncertainty regarding its availability or effect.' " *Direct Mktg. Ass'n v. Bennett*, 916 F.2d 1451, 1453 (9th Cir. 1990) (quoting *Ashton v. Cory*, 780 F.2d 816, 819 (9th Cir. 1986)). A remedy is "efficient" unless it imposes an "unusual hardship . . . requiring ineffectual activity or an unnecessary expenditure of time or energy." *Rosewell*, 450 U.S. at 518.

### B.   *The Unavailability of a Class Action in State Court*

**[4]** Plaintiffs first argue that Nevada's remedy is inefficient because class action suits to challenge *ad valorem* tax assessments are not available in Nevada state court. We disagree. Although filing a class action in federal court may be more efficient than filing individual suits in state court, the state court remedy need not be equal to or better than the remedy available in federal court to qualify as "efficient" under the Act. *See Mandel*, 494 F.2d at 367 (dismissing the plaintiff's argument that a state court remedy was inadequate because it might require litigation involving 58 counties and several thousand plaintiffs).

In support of their argument, Plaintiffs cite *Garrett v. Bamford*, 538 F.2d 63 (3d Cir. 1976), in which the taxpayers claimed that a Pennsylvania county's method of calculating property taxes was racially discriminatory. There, the Third Circuit held that Pennsylvania failed to provide an efficient remedy because no class action was available to the plaintiffs in state court. *Id.* at 71-72. The court's decision in *Garrett*, however, was motivated primarily by the fact that the case involved "systematic and intentional" racial discrimination and that the cost of bringing individual suits would have been

prohibitively expensive given the low economic status of the putative class members. *Id.* Thus, as other courts have concluded, *Garrett* may be limited to its facts. *See Robinson Protective Alarm Co. v. City of Philadelphia,* 581 F.2d 371, 378 n.15 (3d Cir. 1978) (distinguishing *Garrett* because it involved "classifications which are constitutionally suspect, triggering strict scrutiny"); *see also Waldron v. Collins*, 788 F.2d 736, 739 (11th Cir. 1986) (interpreting *Garrett* as applying only to cases where "state tax codes utilize classifications which are constitutionally suspect" and holding that the State of Georgia's procedures were not inadequate despite the unavailability of a class action).

**[5]** In any case, we are neither bound nor persuaded by *Garrett* in the present context. If an adequate state court remedy is available to individual taxpayers, the Act's jurisdictional prohibition applies despite the availability of a more efficient federal remedy. We agree with the district court that, as to individual taxpayers, Nevada's administrative and judicial review process provides an effective and adequate means by which a dissatisfied taxpayer may contest his property valuation. The previous success of numerous taxpayers in challenging such valuations further persuades us that individual taxpayers have access to a plain, speedy, and efficient state court remedy. We therefore hold that, because the state court remedy available to individual Nevada taxpayers is adequate, the absence of a class-wide remedy does not render the state court remedy inefficient within the meaning of the Act.

C.  *The Multiplicity-of-Suits Exception*

Plaintiffs next argue that the state remedy is inadequate because taxpayers must file repetitive suits year after year to challenge a tax that the Nevada Supreme Court twice has declared unconstitutional. Citing *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582 (1995), Plaintiffs argue that the "multiplicity-of-suits" exception to the Act allows for federal jurisdiction over their

claims. In *National Private Truck Council*, the Supreme Court stated in a footnote:

> [I]f the enforcement of the tax would lead to a multiplicity of suits, . . . equity might be invoked. As we have made clear, however, the multiplicity-of-suits rationale for permitting equitable relief extends only to those situations where there is a real risk of numerous suits between the same parties, involving the same issues of law or fact. Thus, if a state court awards a refund to a taxpayer on the ground that the tax violates the Federal Constitution, but state tax authorities continue to impose the unconstitutional tax, injunctive and declaratory relief might then be appropriate. In such circumstances, the remedy might be thought to be inadequate.

*Id.* at 591 n.6 (citations and internal quotation marks omitted).

**[6]** Plaintiffs also rely on our decision in *Patel v. City of San Bernardino*, 310 F.3d 1138 (9th Cir. 2002). In *Patel*, the City of San Bernardino continued to collect a transient occupancy tax for several months after a California Court of Appeal decision invalidated the tax on federal due process grounds. *Id.* at 1142. On those facts, we held that a state court remedy is uncertain and inadequate when a tax continues to be collected after a state court has determined that the tax violates the Federal Constitution. *Id.*

**[7]** Unlike the situation described in *National Private Truck Council* and presented by *Patel*, this case does not involve the same issues of law and fact previously adjudicated by a state court. The Nevada Supreme Court's decisions in *Bakst* and *Barta* addressed only the Assessor's 2002 appraisal of Plaintiffs' real property. The Assessor's new, separate 2007 appraisal has never been declared invalid by a Nevada court. Thus, unlike the city-defendant in *Patel*, Defendants here did not continue to collect a tax that a state court previously had

declared invalid. Consequently, Plaintiffs have not demonstrated that the state court remedy in this case is uncertain and therefore not "plain."[1]

### D.   *The State Board of Equalization as Adverse Fact-Finder*

Finally, Plaintiffs maintain that the state court cannot afford them a full and fair hearing because the State Board of Equalization is the primary fact-finder in the state administrative process and the State Board has been adverse to the taxpayers in state court cases, some of which remain pending. We are unpersuaded.

[8] Plaintiffs' claims of bias do not impeach the adequacy of the state *court* remedy, which is the lens through which 28 U.S.C. § 1341 tells us to look. Plaintiffs have not established that Nevada state courts are incapable of reviewing and, when appropriate, remedying any bias exhibited by the State Board in its fact-finding process. We therefore reject Plaintiffs' argument that the State Board's allegedly biased fact-finding

---

[1]We further note that the dictum in *National Private Truck Council* and the holding in *Patel* concern situations in which a state court declared a tax invalid under the *Federal* Constitution. Here, no state court has ruled that the Assessor's valuation methods violated the *Federal* Constitution. Indeed, the Nevada Supreme Court rulings in *Barta* and *Bakst* address only a provision in the *state* constitution that is not analogous to any federal constitutional guarantee. Given that no federal right was directly at issue in Bakst and *Barta*, the Act's underlying policies of federalism and comity would seem to recommend against federal interference. *See Nat'l Private Truck Council*, 515 U.S. at 586 ("[P]rinciples of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration."); *Rosewell*, 450 U.S. at 513-15 (holding that the Act's exception requires that the state provide a full hearing and judicial determination of any and all federal constitutional objections). Because the present case involves issues of law and fact not presented in *Bakst* and *Barta*, we need not decide whether the state-law basis of those holdings further distinguishes *Patel* and *National Private Truck Council*.

denies Nevada taxpayers a plain, speedy, and efficient remedy in the state court.

**AFFIRMED.**