# IN THE SUPREME COURT OF THE STATE OF NEVADA

ROBERT LEE MCCONNELL,
Appellant,
vs.
RENEE BAKER, WARDEN; AND
CATHERINE CORTEZ MASTO,
ATTORNEY GENERAL FOR THE
STATE OF NEVADA,
Respondents.

No. 71061

**FILED**

SEP 21 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order denying a postconviction petition for a writ of habeas corpus. Second Judicial District Court, Washoe County; Lidia Stiglich, Judge. Appellant contends that the district court erred by denying his petition. We disagree and affirm.[1]

Appellant filed his petition more than five years after remittitur issued from his direct appeal, *McConnell v. State*, 120 Nev. 1043, 102 P.3d 606 (2004); thus, the petition was untimely pursuant to NRS 34.726(1). Moreover, because appellant had previously filed a postconviction petition, *McConnell v. State*, 125 Nev. 243, 245, 212 P.3d 307, 309 (2009), the petition was successive to the extent it raised claims that were previously litigated and resolved on their merits, and it constituted an abuse of the writ to the extent it raised new claims. *See* NRS 34.810(2). Further, any claims that could have been raised in prior proceedings were waived pursuant to NRS 34.810(1)(b). Accordingly, the petition was procedurally barred absent a

---

[1]Appellant asserts that the district court's orders and the State's answer do not adequately address all of his claims. We conclude that the district court's orders and the State's answer are sufficient given appellant's pleading. Similarly, we have endeavored to address each of appellant's contentions in this order, any claim not specifically addressed was considered and rejected as procedurally barred.

18-37013

demonstration of good cause and prejudice, *see* NRS 34.726(1); NRS 34.810(1)-(3), or a showing that the procedural bars should be excused to prevent a fundamental miscarriage of justice, *see Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001).

*Ineffective assistance of postconviction counsel*

Appellant contends that he demonstrated good cause and prejudice to excuse the procedural bars because first postconviction counsel provided ineffective assistance. Because a petitioner sentenced to death is entitled to the appointment of counsel for his first postconviction proceeding, *see* NRS 34.820(1), he is entitled to the effective assistance of that counsel, and a meritorious claim that postconviction counsel was ineffective can provide cause to excuse the procedural bars, *Crump v. Warden*, 113 Nev. 293, 304-05, 934 P.2d 247, 254 (1997). To establish that postconviction counsel was ineffective, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness and a reasonable probability that the outcome of the first postconviction proceeding would have been different. *Id.* at 304 & n.6, 934 P.2d at 254 & n.6 (applying the deficiency-and-prejudice test described in *Strickland v. Washington*, 466 U.S. 668 (1984), to postconviction counsel).

*Failure to challenge the waiver of the right to counsel*

After waiving his right to counsel, appellant pleaded guilty to the charges and represented himself in a penalty hearing. He asserts that postconviction counsel should have challenged his waiver of the right to counsel on several grounds relating to his mental health. *See Faretta v. California*, 422 U.S. 806, 807 (1975) (holding that a defendant has a right

to represent himself at trial so long as his decision to waive the right to counsel is knowing and intelligent).[2]

First, appellant asserts that postconviction counsel should have argued that the trial court failed to adequately canvass him regarding his mental health and why he wanted to represent himself. He claims that had the trial court asked these questions it would not have granted his request. Appellant fails to demonstrate deficient performance or prejudice. This court has held that a trial court need not conduct a mechanical *Faretta* canvass and need only ensure that a defendant understands the risks of self-representation and the rights he is relinquishing. *Hooks v. State*, 124 Nev. 48, 53-55, 176 P.3d 1081, 1084-85 (2008). This court will uphold the trial court's decision permitting a defendant to waive his right to counsel so long as the record demonstrates that the defendant "knew his rights and insisted upon representing himself." *Id.* (internal quotation marks omitted). Here, the trial court appropriately canvassed appellant pursuant to *Faretta*. In doing so, the trial court asked appellant about his mental health history; appellant responded that he had no significant mental health history. Appellant points to no authority suggesting that the trial court should have looked past his response. *See* SCR 253(3)(c) (stating that the trial court's canvass of the defendant "may" include questions regarding his mental health history). Similarly, he points to no authority supporting his

---

[2]Appellant repeatedly conflates his ability to represent himself with his ability to validly waive his right to counsel. Whether a defendant is "capable" of representing himself is not a relevant inquiry under Nevada law; thus, the relevant question for the purpose of this claim is whether appellant's waiver of the right to counsel was valid. *Johnson v. State*, 117 Nev. 153, 164, 17 P.3d 1008, 1015-16 (2001). We reject appellant's arguments based on *Indiana v. Edwards*, 554 U.S. 164 (2008), and decline to overrule *Johnson*.

assertion that the trial court was required to ask him why he wanted to represent himself. Importantly, the record establishes that appellant understood and accepted the risks of self-representation. Appellant has not demonstrated that the trial court's failure to inquire further into his mental health or ask why he wanted to represent himself undermined the validity of his waiver of the right to counsel. He also fails to demonstrate that the trial court would not have granted his self-representation request had it received additional information regarding his mental health. Because appellant has not established a meritorious challenge to his waiver of the right to counsel, his claim that postconviction counsel provided ineffective assistance by omitting that challenge fails.

Next, appellant asserts that postconviction counsel should have argued that trial counsels' failure to disclose appellant's mental health information during the *Faretta* canvass constituted the constructive denial of counsel. *See United States v. Cronic*, 466 U.S. 648, 659-60 (1984) (recognizing that the complete denial of counsel at a critical stage warrants the presumption of prejudice).[3] He relies on *Appel v. Horn*, which held that a defendant was constructively denied counsel when his attorneys mistakenly believed they did not represent him, and as a result, did not subject the issue of his competency to stand trial to any "'meaningful adversarial testing.'" 250 F.3d 203, 215, 217 (3d Cir. 2001) (quoting *Cronic*, 466 U.S. at 659). *Appel* is distinguishable: trial counsel in this case explained at the evidentiary hearing that they made a conscious decision to

---

[3]For purposes of this disposition, we refer to the lawyers who represented McConnell before he waived his right to counsel as "trial counsel." *Cf.* NRAP 3C(b)(1) (explaining that for purposes of rule governing fast track criminal appeals, which impose obligations on "trial counsel," that term "means the attorney who represented the defendant . . . in district court in the underlying proceedings that are the subject of the appeal").

avoid bringing up appellant's mental health information because appellant was adamant that they not disclose the information and they believed that appellant was competent based on the information available to them, including expert opinions and their own interactions with him. And, appellant has not demonstrated that his mental health issues precluded him from validly waiving the right to counsel. Because appellant has not established a meritorious challenge to trial counsels' performance in relation to the *Faretta* canvass, his claim that postconviction counsel provided ineffective assistance by omitting that challenge fails.

Appellant also asserts postconviction counsel should have argued that appellate counsel was ineffective for failing to challenge the *Faretta* canvass. To the extent he argues that appellate counsel should have challenged the canvass on the grounds described above, that appellate-counsel claim fails for the same reasons. To the extent appellant argues that appellate counsel should have argued that the trial court failed to inform him of potential defenses as required by *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948), we conclude that there is not a reasonable probability that this claim would have succeeded on direct appeal. *See Hooks*, 124 Nev. at 53-55, 176 P.3d at 1084-85; *cf.* SCR 253(3)(h) (the trial court "may" question a defendant about his knowledge of possible defenses). In particular, appellant does not identify a defense that he believes the trial court should have told him about. Accordingly, we conclude that no relief is warranted on this claim. Because appellant has not established a meritorious challenge to appellate counsel's performance in this respect, his claim that postconviction counsel provided ineffective assistance by omitting that challenge fails.

*Conflicts of interest*

Appellant asserts that postconviction counsel should have argued that trial counsel had numerous conflicts of interest. To be entitled to relief on a conflict-of-interest claim, a petitioner must show that (1) counsel had an actual conflict of interest, which (2) adversely affected their performance. *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). Appellant fails to establish a viable conflict-of-interest claim for three reasons.

First, appellant does not clearly identify the relationships that created the conflicts, nor does he adequately explain how those relationships would constitute an actual conflict of interest as described in *Cuyler*. Relatedly, he fails to demonstrate that any actual conflicts of interest existed. Although he argues he cannot do so because first postconviction counsel failed to adequately investigate, a petitioner alleging that an attorney should have conducted a better investigation must demonstrate what a better investigation would have revealed, *Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004), which appellant has not done.[4]

Second, appellant fails to adequately distinguish between when he was represented by counsel and when he was representing himself. This matters because conflict-of-interest claims are grounded in the Sixth Amendment right to counsel, but appellant had no such right after he began representing himself. *See Harris v. State*, 113 Nev. 799, 804, 942 P.2d 151, 155 (1997); *see also United States v. Bruce*, 89 F.3d 886, 895 (D.C. Cir. 1996) (denying relief where the alleged conflict of interest occurred after the relevant time frame "and for that reason cannot be factored into the

_____

[4]Because we conclude that appellant fails to demonstrate that trial counsel had a conflict of interest, we similarly conclude that he fails to demonstrate that appellate counsel had any conflicts of interest.

SUPREME COURT
OF
NEVADA

(O) 1947A

analysis of whether the conflict itself adversely affected the representation"). He therefore fails to demonstrate that any actual conflict of interest adversely affected counsels' performance during the relevant time frame.

Finally, even assuming that counsel had conflicts of interest, those conflicts were irrelevant to any issue of consequence. *See Moss v. United States*, 323 F.3d 445, 463-64 (6th Cir. 2003) (holding that there is no Sixth Amendment violation if "the conflict is as to a matter that is irrelevant"). For any alleged conflict to matter in this case, it must have played a role in appellant's decision to represent himself or undermined his waiver of the right to counsel in some appreciable way. *See generally Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1987) (explaining that to successfully assert a conflict-of-interest claim where a defendant pleaded guilty, the defendant must demonstrate that the conflict had an adverse impact on the plea). Appellant points to nothing in the record to demonstrate that his decision to represent himself was influenced by an alleged conflict. Instead, the record indicates that appellant chose to represent himself for reasons unrelated to the alleged conflicts, and appellant did not testify to the contrary at the evidentiary hearing. To the extent appellant suggests that the uncertainty surrounding this issue renders his waiver of the right to counsel invalid as a matter of law, he points to no law to support this position. Because appellant has not established a meritorious conflict-of-interest claim, his claim that postconviction counsel provided ineffective assistance by omitting the conflict-of-interest claim fails.

*Actual innocence of the death penalty*

Appellant contends that the district court erred by denying his petition because he is actually innocent of the death penalty, which may excuse his failure to show good cause based on the ineffective assistance of his first postconviction counsel. *See Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001). We disagree because at least one aggravating circumstance remains and therefore appellant remains eligible for the death penalty. *See Lisle v. State*, 131 Nev. 356, 362, 351 P.3d 725, 730 (2015) (explaining that actual innocence of the death penalty means that no rational juror would have found an appellant to be eligible for the death penalty, i.e., that the defendant is innocent of the capital offense or that there are no statutory aggravating circumstances); *Moore v. State*, 134 Nev., Adv. Op. 35, 417 P.3d 356, 363 (2018) (holding that a petitioner failed to demonstrate actual innocence of the death penalty where one aggravating circumstance remained).

*Remaining claims*

Appellant asserts that the district court erred by denying his claims that his guilty plea is invalid, the trial court erred by quashing a subpoena seeking his former girlfriend's parole and probation report and not letting him cross-examine her regarding restraining orders, appellate counsel was ineffective for failing to raise the trial court's decision to quash the subpoena as a constitutional claim, jury instructions given at his trial were invalid,[5] the introduction of victim impact evidence violated the constitution, his convictions and sentences are invalid because judges are

---

[5]Appellant argues that he has good cause to relitigate a jury instruction issue he previously raised, relying on the Supreme Court's decision in *Hurst v. Florida*, 577 U.S. ___, 136 S. Ct. 616 (2016). We recently rejected appellant's interpretation of *Hurst. See Jeremias v. State*, 134 Nev., Adv. Op. 8, 412 P.3d 43, 53 (2018).

elected, and cumulative error warrants relief. We conclude that no relief is warranted on these claims because they are procedurally barred and appellant either fails to explain why the procedural bars should be excused, does so superficially, or otherwise fails to adequately allege and demonstrate good cause and prejudice. *See Evans v. State*, 117 Nev. 609, 647, 28 P.3d 498, 523 (2001) (explaining that this court will decline to consider conclusory or catchall attempts to assert ineffective assistance of counsel). Finally, we conclude that no relief is warranted regarding appellant's claim that the death penalty is unconstitutional due to issues with the execution chamber.

Having concluded that no relief is warranted, we

ORDER the judgment of the district court AFFIRMED.[6]

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Cherry

_____, J.
Pickering

_____, J.
Parraguirre

cc: Department 8, Second Judicial District Court
Federal Public Defender/Las Vegas
Attorney General/Carson City
Washoe County District Attorney
Washoe District Court Clerk

---

[6]The Honorable Lidia Stiglich, Justice, did not participate in the decision in this matter.